**CAPRICORN POWER COMPANY, INC.,** Capricorn Power Partners, L.P., CE Colver I, Inc., CE Colver Limited Partnership, Inter–Power of Pennsylvania, Inc., and Inter–Power Resource Partners, L.P. trading as Inter–Power/Ahlcon Partners, L.P., Plaintiffs,

v.

**SIEMENS WESTINGHOUSE POWER CORPORATION, Defendant.**

Civil Action No. 01–39J.

United States District Court, W.D. Pennsylvania.

April 21, 2004.

430

Mark D. Shepard, Kevin L. Barley, Babst, Calland, Clements & Zomnir, Bruce E. Stanley, Arthur H. Stroyd, Michael G. Connelly, Reed Smith, Pittsburgh, PA, Blair V. Pawlowski, Heath Long, Pawlowski, Homady & Long, Ebensburg, PA, for plaintiffs.

Frederick W. Bode, III, Steven W. Zoffer, Lisa M. Tumolo, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION and ORDER OF COURT

GIBSON, District Judge.

### SYNOPSIS

Both the Defendant and the Plaintiffs have filed motions requesting orders of court that direct the preservation of documents and things. The current case law does not provide a definitive test to apply when deciding such motions. Upon review of the circumstances, and being guided by present law, a three part test is developed and applied by the Court. Under such a test, both motions for an order of preservation are denied. The Defendant's motion to strike the Plaintiff's motion is also denied as moot. The Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### FACTUAL/PROCEDURAL HISTORY

This case comes before the Court on the following motions:

Siemens Westinghouse Power Corporation's (hereinafter "Defendant") Motion for Order of Court Directing Preservation of Documents, Software and Things; Capricorn Power Company, Inc. and all other Plaintiffs' (hereinafter "Plaintiffs") Response and Counter–Motion To Defendant's Motion For Order of Court Directing Preservation of Documents, Software and Things; and Defendant's Response, Motion to Strike Plaintiffs' Counter–Motion To Defendant's Motion For Order of Court Directing Preservation of Documents, Software and Things and Plaintiff's Response in Opposition to Defendant's Motion to Strike Plaintiffs' Counter–Motion To Defendant's Motion for Order of Court Directing preservation of Documents, Software and Things.

This matter came to trial before a jury on January 12, 2004 and ended in a mistrial on January 15, 2004. The mistrial was declared because an expert report dated June 23, 2000 was not produced by Plaintiff until January 15, 2004. The expert report was referred to by a witness on January 14, 2004 in the course of a *Daubert* hearing concerning the expert opinions of Dr. Bagnall and was turned over to counsel for Defendant before the resumption of trial testimony on the morning of January 15, 2004. Prior to beginning testimony on January 15, 2004 the Court heard oral argument from both parties on the Defendant's Motion for Mistrial and subsequently granted the motion, finding that the late production prejudiced the Defendant's case as to the preparation of its expert witnesses, the cross-examination of the Plaintiffs' witnesses, as well as the fact that the expert report "may have a significant impact upon the entire posture and strategy of Defendant's case." Trial transcript from January 15, 2004 at p. 63.

Subsequently, the Defendant moved for the preservation of documents in a motion filed on February 18, 2004 requesting a court order be issued to preserve all relevant material set forth in the subpoena attached to the Defendant's Motion. Based upon the

testimony of Dr. Bagnall, the Defendant believes other potential materials exist that would be relevant to its case. Defendant requests an order to "fully secure all of the information gathered by Mr. Bagnall and CTC," and to "properly prepare for filing of dispositive Motions based upon this new evidence." The Defendant further indicates that it is a party's duty to preserve evidence under F.R.C.P. 34; that the Plaintiff will not be harmed by such an order; that the Defendant previously delayed the filing of its motion in order for Concurrent Technologies Corporation (hereinafter "CTC") to respond to the subpoena; and that CTC missed the Defendant's deadline and the Defendant's motion was then filed.

The Plaintiffs filed their response and a counter-motion on March 9, 2004. Plaintiffs do not object to the Defendant's motion, except to the extent that they believe an order for preservation of material should be issued as to both parties. The Plaintiffs indicate that their experts and consultants have preserved the materials for which the Defendant requested a preservation order. Further, the Plaintiffs request that certain materials be preserved by the Defendant for their benefit "[b]ecause of Defendant's past failures to produce documents and materials during the course of discovery in this matter and because of Defendant's apparent intent to now change the nature of its defense in this action." The materials referenced by the Plaintiffs are materials previously requested by them in discovery.

The Defendant responded to the Plaintiffs' counter-motion arguing, *inter alia,* that the materials that the Plaintiffs wish to have preserved are irrelevant pursuant to previous orders entered by both Judge Kim R. Gibson and Judge Terrence McVerry, who formerly presided over this matter. A motion to strike the Plaintiffs' counter-motion was also filed by the Defendant along with its response on March 19, 2004.

## ANALYSIS

The Court notes that orders directing parties to preserve materials or documents are common in circumstances in which evidence is subject to being destroyed or lost in routine and sometimes not-so-routine deletion or destruction of information in various mediums. However, the reported case law concerning standards for deciding such motions is scant.

In the case of *Humble Oil & Refining Company v. Harang et al.,* 262 F.Supp. 39 (E.D.La.1966), the District Court in the Eastern District of Louisiana addressed a request for the issuance of a preliminary injunction to prevent destruction of certain records which the plaintiff sought in discovery. The court took up the matter after the expiration of a restraining order that had been issued at the time of the filing of the complaint. The court analyzed the plaintiff's request for a preliminary injunction as follows:

> An injunction should be issued only to prevent irreparable injury, but the rush of a litigant to the courthouse to seek the court's aid in restraint of an adverse party is not justified merely because it is alleged that, in the absence of judicial prohibition, an event may occur, the consequences of which cannot be reversed. The necessity for the injunction must be demonstrated clearly. Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties.

> It is apparent that the plaintiff may be irreparably injured if the evidentiary documents necessary to prove its claim are destroyed or otherwise put beyond the reach of the court. But this is true in every situation in which proof of a claim rests on documentary evidence; the parties may be irreparably injured if the documents are destroyed. Were the fact that a party to a law suit would suffer irreparable injury if a document were destroyed the sole test for the issuance of an injunction to prevent its destruction, injunctions should issue in every case in which important documents are within the control of either party. Obviously, this is not done and it cannot and should not be done. *When the party who seeks an injunction shows potential irreparable injury, he has established merely one essential condition for relief. He must demonstrate in addi-*

.

*tion that there is real danger that the acts to be enjoined will occur, that there is no other remedy available, and that, under these circumstances, the court should exercise its discretion to afford the unusual relief provided by its injunction.*

It goes without saying that Rule 34 of the Federal Rules of Civil Procedure embodies the normal procedure for the discovery of documents. There is virtually no textual authority or jurisprudence dealing with the issuance of an injunction to prevent the destruction of documents during the course of litigation. However, in Moore's Federal Practice, Section 34.19 (page 2480), the author states:

> "There is no reason for issuance of an injunction either in lieu of or in aid of discovery under Rule 34."

This observation is based upon the decision in *Humble Oil & Refining Company v. Sun Oil Company*, 175 F.2d 670 (5th Cir.1949). While that case involved an injunction sought to prevent interference with the inspection of premises, the Court found that an injunction had been improvidently granted by the trial court whether the order was to be considered an entirely independent injunction or merely in aid of discovery under Rule 34. The Court observed:

> "What appellee is attempting to do here is, without any necessity or reason for it, to employ a substitute procedure for that provided in the rules. This procedure is not only more cumbersome and less precise and effective in the trial court, but it enables the progress of the suit to be delayed while interlocutory appeals are being heard. In addition, by introducing interlocutory appealable orders where the rules provide for none, it unduly increases the burdens of the appellate Court."

Counsel for the plaintiff correctly points out that a distinction can be drawn between the present case and *Humble Oil & Refining Company v. Sun Oil Company, supra,* on the basis that Rule 37 provides no penalty if the defendant should destroy the records sought in this case before an order for their production can be obtained.

The defendant, however, testified that he had all of the original records in his possession, and had no intention of destroying them. His counsel made an offer at the trial of the rule to exchange documents in an orderly discovery procedure. The plaintiff offered no proof that there was an imminent threat of destruction or concealment of the evidentiary documents before a satisfactory order could be obtained under Rule 34, except the otherwise unsupported affidavit already quoted. This proof was not adequate to meet the burden that rests upon the plaintiff to demonstrate that the extraordinary remedy sought by it should be granted in the face of the defendant's testimony and the offer of defendant's counsel.

The plaintiff also contended that the injunction should issue because, until preliminary discovery is completed, it cannot describe the documents it seeks with sufficient detail to obtain an order for their production under Rule 34. If this is so, how can the injunction be properly enforced? A court, of course, normally refrains from issuing an injunction unless the injunction "will be effective to prevent the damage which it seeks to prevent."

It is true that the injunction sought would cause no hardship to the defendant since it would command him merely to do what he testified in open court that he had every intention of doing. Nonetheless, the lack of hardship on the defendant is not of itself sufficient reason for granting an injunction. The proper case for an injunction must be made out by the plaintiff, and it does not suffice to say, "Issue it because it won't hurt the other party."

*Humble Oil & Refining Co. v. Harang*, 262 F.Supp. 39, 42–44 (E.D.La.1966)(emphasis added).

Since the time *Humble Oil* was written, motions for preservation of documents or things and orders granting such motions have become widely used in the place of restraining orders or injunctions, however, it's important to recognize that orders to preserve documents and things have their origin within the equity power of the courts to grant injunctions. It must also be recog-

nized that district courts have the power to control the discovery process and overall case management. *The Pueblo of Laguna v. United States*, 60 Fed.Cl. 133, n. 8 (2004). The Court agrees with the comment of the Court of Federal Claims in footnote eight of *Pueblo of Laguna* that the form, but not the substance of a preservation order, is one of an injunctive order. *See id.* Therefore, due consideration must be given to the fact that the granting of an order of preservation concerns matters within the scope of the rules of discovery as set forth in the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 34 addresses the production of documents and things and the entry onto land for discovery purposes. Absent from Rule 34 is a procedure to preserve documents, things or land from damage or destruction that could compromise the integrity or the very existence of the evidence requested. Rule 34 does refer the reader to Rule 37, the rule governing the compelling of individuals or entities to produce discovery and accompanying sanctions, when an objection to a request or a failure to respond or permit inspection occurs. FED. R.CIV.P. 37. Nonetheless, Rule 37 also does not address the situation where potential evidence may be compromised or destroyed.

As a result, we conclude that the four prong test[1] typically applied to matters concerning injunctive relief is not a completely appropriate test to utilize when examining the need for a preservation order, particularly since proof of a probability of success in the litigation is not an appropriate consideration in the determination whether to order preservation of documents. To require such proof would be contrary to the dictates of the scope of discovery which permits discovery of all things, not privileged, that appear to be "reasonably calculated to lead to discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). In addition, the public interest is not a significant factor in the discovery process as discovery at its essence affects only the parties to the litigation, and additionally access to

particularly sensitive items obtained in discovery can be limited by the court with the additional requirement of destruction or return to the opposing party after completion of an appeal. Considering these differences, adoption of the four part test used for injunctive relief is not appropriate in the judicial determination of motions seeking preservation orders.

The determination whether to issue a preservation order should properly include consideration of a court's power to oversee discovery and correct abuses. Additionally, where the preservation of evidence is alleged to be of utmost urgency because of an imminent threat to the integrity or existence of evidence, either by intentional or unintentional means, the guidance and approach utilized by courts in the granting of injunctive relief can assist a court in assessing the level of the threat to the evidence with regard to the magnitude and imminence of the danger. An evaluation of a motion for a preservation order therefore demands application of a separate and distinct test, which can be formulated by molding the factors used in granting injunctive relief with the considerations, policies and goals applicable to discovery.

■ While remaining consistent with the Federal Rules of Civil Procedure, but still addressing the need to perform the judicial duty to oversee and decide discovery disputes, this Court believes that a balancing test which considers the following three factors should be used when deciding a motion to preserve documents, things and land: 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or

---

1. "1) A reasonable probability of eventual success in the litigation; and 2) irreparable injury if relief is not granted, while taking into account when relevant; 3) the possibility of harm to other interested persons from the grant or denial of the injunction and; 4) the public interest." *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 140 (3rd Cir.1997) *citing Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994).

contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.[2]

■ At the outset, in implementing this balancing test it is important to stress that the type of evidence will change from case to case and clearly the attendant circumstances of each case will dictate the necessity of the preservation order requested. The issues raised by a request for a preservation order require the trial court to exercise its discretion, and the factors set forth in the balancing test are only intended to assist the court by focusing on important areas which will arise in all such cases. Finally, it is important to note that the Court believes that a motion for a preservation order can be granted with regard to all items of evidence which are *discoverable* in accordance with Federal Rule of Civil Procedure 26(b)(1), without the necessity of establishing that the evidence will necessarily be relevant and admissible at trial.

## 1. LEVEL OF CONCERN FOR THE CONTINUING EXISTENCE AND INTEGRITY OF THE EVIDENCE

The first prong of the balancing test, namely the court's level of concern for the continuing existence and maintenance of the integrity of the evidence, is clearly a necessary component in the determination whether to grant or deny a preservation order. This is so because in the absence of any significant past, present or future threat to the continuing integrity or existence of the evidence, such an order is superfluous.

At times evidence may be outside of the possession of all parties and this may create a concern for the continuing existence of the evidence at question. Other circumstances may provide a basis for concern that a party is intentionally damaging or destroying the evidence, or is planning such an action, in order to compromise the case of its opponent.

2. This three-part test resembles the test set forth in *In re African–American Slave Descendants' Litigation*, 2003 U.S. Dist. LEXIS 12016 (July 14, 2003) where, Judge Norgle of the Northern District of Illinois stated that he would evaluate three factors in determining if a order preserving evidence is warranted: "1) whether Plaintiffs can demonstrate that Defendants will destroy necessary documentation without a preservation order; 2) whether Plaintiffs will suffer irreparable harm if a preservation order is not entered; and 3) the burden imposed upon the parties by granting a preservation order." *Id.* at 7–8. While we agree with our colleague in the Northern District of Illinois as to the factors to be considered in granting a preservation order and would gladly cite to his opinion, this Court refrains from such action for two reasons: 1) Judge Norgle's opinion is not reported and is only found within the LEXIS online database and the Court is resistant to citing unreported cases; and 2) the factors cited by Judge Norgle have no prior basis in case law (at least none was cited) nor is any deductive reasoning set forth in his opinion. This Court does not believe these considerations take away from Judge Norgle's use of the three factors he cites in his opinion. However, this Court sets forth its own independent reasoning for adopting these factors in the hope that it will strengthen the test set forth by Judge Norgle, perhaps encourage its usage in other civil actions, and lend guidance as to our decision to use these three factors to the Court of Appeals should this issue be in contention in a possible future appeal.

The Court recognizes the analysis of the Court of Federal Claims in the case of *The Pueblo of*

*Laguna v. United States,* 60 Fed.Cl. 133 (2004) wherein the court relied upon a two prong test requiring "one seeking a preservation order demonstrate that it is necessary and not unduly burdensome." *Pueblo of Laguna,* 60 Fed.Cl. at 138, 2004 WL 542633, at *4. This test does not appear to have adequate precision or sufficient depth of analysis of the factors set forth above that are germane to every preservation order.

It must also be noted that many of the other cases reviewed by the Court that concern the granting of an order of preservation have cited to the *Manual for Complex Litigation,* in its second, third, and fourth editions. In the fourth edition, § 11.442 entitled "Preservation" speaks to the need for preservation orders in complex litigation. Sample Order 40.25 in the *Manual* sets forth a model for a preservation order. These sections of the *Manual* do not contradict our analysis and findings. The Court recognizes that it has become routine to order the preservation of evidence prior to the beginning of the discovery period at the initial case management conference and sometimes even before such a conference in complex litigation. *Manual for Complex Litigation, Fourth* § 11.442. The circumstances of the three motions before the Court do not concern "complex" litigation nor are we at the initial stages of discovery with all of the attendant circumstances which are normally present in cases for which the *Manual for Complex Litigation* is intended to provide guidance. *Id* at §§ 10.1, 11.442. Therefore, the Court does not invoke any of the recommendations of that manual for the present analysis.

Still other circumstances may arise where the parties disagree as to the correct manner of the handling of the evidence. The reviewing court, as well as the parties, should be focused upon maintaining the integrity of the evidence in a form as close to, if not identical to, the original condition of the evidence. In the presence of a significant threat, if an order of court can prevent the loss, deterioration or destruction of evidence, while also considering all other relevant circumstances, then such an order may be an appropriate remedy. However, if the evidence, no matter where its location, how it is maintained, or who maintains it, will be lost, deteriorated or destroyed an order of preservation may not be necessary if the parties take immediate action to obtain or reproduce from the evidence the information needed; however, if the parties are not cooperative in this situation, then an order directing the preservation of the evidence in question in a manner that will preserve the whole of the evidence for the benefit of all parties may be necessary.

## 2. POSSIBILITY OF IRREPARABLE HARM TO THE PARTY SEEKING PRESERVATION IN THE ABSENCE OF A PRESERVATION ORDER

Second, the degree of the harm likely to result to the party seeking the preservation order must also be weighed. At times, evidence may be a "one-of-a-kind", an irreplaceable item such as where a key item of evidence is tested through "non-destructive" means. The loss or destruction of certain evidence can result in significant prejudice to the party seeking to use it in proving the party's claims. In appropriate cases it becomes a judicial duty to protect a party from likely harm by acting to prevent the loss or destruction of evidence, thereby ensuring that the party may prosecute or defend its case in a court of law.

Additionally, certain evidence may be so integral and essential to a party's case that an order of preservation or some other manner of preventative maintenance of the evidence may be required, even in the absence of a threat of imminent, significant harm to the integrity or existence of the evidence. While such circumstances may be rare, they

may require a preservation order from a court, thus allowing this second factor to overcome the absence of a significant level of concern as required under the first prong of the balancing test.

Clearly, however, a more compelling argument for a preservation order will be made where both factors are present. Considering that the loss of any evidence may damage a claim to some degree, a party could conceivably argue that the loss of any item of evidence intended to be offered at trial will cause harm sufficient to justify an order of preservation. Accordingly, while it could be argued that a court should always enter an order preserving evidence when a question arises as to its continued existence or integrity, such a reflexive, invariable judicial action in response to each motion for preservation of evidence would be impracticable and would trivialize the need for preservation orders in truly justifiable circumstances.

Therefore, where the need expressed by the moving party for a preservation order is based upon an indefinite or unspecified possibility of the loss or destruction of evidence, rather than a specific, significant, imminent threat of loss, a preservation order usually will not be justified. Also, where an imminent, specific threat to the evidence is demonstrated, but the level of harm which will result is not significant, then an order of preservation usually will not be justified. In most cases, the presence of both factor one and factor two to a significant degree will be required in order for a preservation order to be justified. However, it must be remembered that in a balancing test one factor may be so crucial that the presence of just that one factor may provide a sufficient justification for an order of preservation.

## 3. ABILITY TO MAINTAIN AND PRESERVE THE EVIDENCE

Third, the capability to maintain the evidence sought to be preserved must also be weighed with the other two factors. Evidence can take many forms in the world today. Considerations such as storage space, maintenance and storage fees, and physical deterioration of the evidence are just a few of the considerations to be evaluated when con-

sidering this final factor of the three-part balancing test. Certain circumstances may impose burdens upon those parties and non-parties possessing evidence which may be unfair or oppressive to the point that a judicially imposed allocation of the burdens between the parties to the civil action may be required. Preservation of evidence may be particularly burdensome for non-parties, considering that their interest in the pending civil action is minuscule while the restrictions that can be imposed in a motion for preservation may be expensive and voluminous. In such instances, the party seeking preservation, and possibly the opposing party, may be required to ensure the preservation of the evidence, rather than placing that burden upon uninvolved third party possessors of the evidence.

The problems involved in the maintenance of evidence will vary considerably depending upon the medium in which the evidence is contained. If the evidence is stored upon a computer floppy disk or hard drive, finding physical space to store the evidence will not be as much of an issue as it will be in the situation involving an accumulation of paper documentation over a period of many years where a preservation order may have to encompass substantial copying and warehousing. On the other hand, informational evidence stored within a computer hard drive may present a difficulty in that it may be compromised or degraded as new information is added and pieces of old information are "deleted" and subsequently written over by the computer. As a result, the timing of the preservation order may be of the essence, especially if the person possessing the computer is without knowledge that the information contained on the computer hard drive is evidence which needs to be preserved. Such a situation may require immediate action by the court to preserve such electronic evidence at least temporarily in order that the parties may have an opportunity to confirm that such evidence is relevant to the claims before the court. This computer information example is only one hypothetical scenario; the circumstances and considerations to be evaluated in determining the need for a preservation order can be limitless

since evidence to be used at trial can be in a myriad of forms and mediums.

Applying this three part balancing test to the circumstances and considerations present in the case *sub judice*, the Court finds no need or justification to enter an order preserving evidence as requested by the Defendant and Plaintiffs.

■ Defendant requests a preservation order for those materials cited in its subpoena dated January 23, 2004 served upon Concurrent Technologies Corporation (hereinafter "CTC") in Johnstown. Among the materials requested were hard and electronic copies of documents and correspondence sent to and from Dr. Bagnall; all records, written or electronic, photographic or videographic, in CTC's possession obtained from the Colver Power Facility as well as physical pieces (the end box and shroud) from the generator at issue in the case and copies of testing results completed with regard to those pieces in addition to other written and electronic records. The Defendant asserts that a preservation order is required for the following reasons: that Dr. Bagnall during the *Daubert* hearing related the fact that other documents and materials may exist which may be relevant to the case; the need to "fully secure" this information and file "dispositive Motions based upon this new evidence"; the responsibility of a party to preserve evidence under F.R.C.P. 34; and the fact that the "Plaintiffs will not be harmed by such an Order" but that the Defendant would be "further substantially and irreparably harmed by the denial of the request to maintain the critical evidence intact from CTC." Defendant also states that it extended the time for responding to the subpoena by ten business days before filing this motion after CTC failed to comply with the extended deadline.

Under these circumstances there is no demonstration by the Defendant that evidence will be lost or destroyed. The attendant circumstances and reasons for the failure to produce the subject report, in which Dr. Bagnall participated, until the fourth day of trial, which event resulted in a mistrial, are not explained within the motion. The failure to produce that report may have resulted

from a sheer oversight, rather than from any intent on the part of the Plaintiffs. The facts currently before the Court do not lead the Court to conclude that the circumstances that lead to the mistrial warrant the granting of a preservation order; indeed the report was produced following Dr. Bagnall's reliance upon it in his testimony. The report was not destroyed by the Plaintiffs but was retained as a litigation related document which was originally considered to be privileged as a consultant's report rather than a report of an expert expected to testify.

These circumstances do not lead the Court to conclude that a preservation order is justified and required based upon Defendant's suspicion that a relevant piece of evidence was intentionally not produced in a timely manner for improper reasons. Had there been evidence of attempted damage or destruction of the report or the data compilations used to produce it, the Court's level of concern for protection of the integrity and existence of the evidence would be different. The Plaintiffs indicate in their response that they have continued to preserve the materials referenced in the Defendant's Motion. Plaintiffs' Response (Doc. #119) at ¶5. Without proof of destruction or degradation of the evidence, the Court finds that the circumstances surrounding the non-production of the report are an insufficient basis upon which to conclude that the integrity or existence of the evidence is threatened in the absence of a preservation order.

In consideration of the irreparable harm which allegedly will occur absent a preservation order, an allegation not fully developed in the record but an allegation which the Court understands based upon the possible importance of the information which the Defendant believes may be contained in the items for which an order of preservation is requested, at this time a preservation order is found to be insufficiently justified under the second prong of balancing test. The information sought could provide a valid basis for the Defendant to posit an alternative theory of circumstances that resulted in the damage of the generator. The evidence sought includes some pieces of the generator that are suspected will lead the Defendant's

experts to formulate this alternative theory. As a result, this factor, namely the importance of the evidence, if more fully developed by the Defendant and supported by the facts, could have favored the granting of the preservation order. However, on the basis of the record before the Court this factor does provide a sufficient basis for a preservation order.

Finally, the information available to the Court does not adequately address the issue of maintenance of the evidence with regard to such relevant considerations as: storage of the physical evidence and whether the evidence can be maintained in a state close to its "original" character which it possessed when first removed from the generator; the maintenance of electronic information, recordings and email existing within the medium of hard drives, floppy disks, or other digital storage formats; and the traditional concerns of ensuring the maintenance of paper documentation which include locating, cataloging and storing such documents for purposes of litigation. These considerations are not meant to be exhaustive, but illustrative of the concerns that need to be addressed when evaluating the burden of maintaining evidence that is ordered to be preserved by a court.

Such maintenance of the evidence considerations were not examined by either party in the case *sub judice*. However, the Court notes that most of the evidence is comprised of physical documentation and electronic documentation, in addition to physical evidence. The Plaintiffs make no claim of inconvenience or inability to maintain the evidence requested from their consultant, CTC. Therefore, the Court finds that the factor regarding the actual continuing physical maintenance and possession of the materials requested does not favor the granting of the preservation order.

In weighing all three of these factors, the Court concludes that a preservation order as requested by the Defendant is not justified or necessary under the present circumstances. While loss of the subpoenaed materials would prejudice the Defendant, the Court's level of concern for the loss or degradation of the evidence in question is not

sufficiently elevated based upon the lack of the presence of a specific, imminent threat supported by the record. In addition, the other two factors do not favor the granting of a preservation order. Accordingly, the Defendant's Motion for Order of Court Directing Preservation of Documents, Software and Things (Document # 113) is denied.

The Plaintiffs in responding to the Defendant's motion presented their own Motion for Order of Court Directing Preservation of Documents, Software and Things. The Plaintiffs initially state in their motion that they do not object to the granting of the Defendant's motion if the order encompasses information sought to be preserved by both parties and not just the Defendant. The Plaintiff then proceeds to discuss the circumstances of the Defendant filing its motion as well as Defendant's alleged failure to comply fully with requested discovery prior to the January 2004 trial. In noting various documents and things that have not been produced by the Defendant in discovery, the Plaintiffs state:

> Because of Defendant's past failures to produce documents and materials during the course of discovery in this matter and because of Defendant's apparent intent to now change the nature of its defense in this action, it is necessary for Plaintiffs to set forth herein the types of documents and materials within the possession, custody or control of Defendant that require preservation and production.

Plaintiffs' Response (Doc. # 119) at ¶ 10. However, the Plaintiffs' motion reads more like a motion to compel documents and things not previously produced than a motion for a preservation order. There is no indication that those materials sought are in danger of being lost or destroyed. In addition, the absence of these materials apparently has not hampered or delayed the Plaintiffs' prosecution of their case in that in January 2004 this case went to trial. Irreparable harm may or may not come about from the loss of these items, but those items which have not been produced or were never in the Plaintiffs' possession, e.g. the original "missing" blower blades, did not prevent the Plaintiffs from trying this matter in January 2004.

Additionally, Plaintiffs' request for preservation of documents, software and things does not address the issue of maintenance and preservation of the evidence by the Defendant or Defendant's agent with regard to factors such as maintaining the physical integrity of evidence, ensuring the preservation of evidence on electronic/digital media, and the location, cataloguing and storage of paper documentation. The Defendant does not claim any hardship in maintaining these documents and things. At its core, the Plaintiffs' motion appears to be a tactical, quid pro quo response to the Defendant's motion rather than a motion motivated by necessity. The motion would appear to be better couched as a motion to compel,[3] not a motion for the preservation of documents. Items not produced in accordance with proper discovery should be brought to the attention of the Court by way of a motion to compel. Motions for the preservation of evidence should be restricted to those circumstances which raise significant concern that discovery lawfully sought by a party will be lost indefinitely without immediate court action in the form of an order of preservation. The Plaintiffs' Counter–Motion for Order of Court Directing Preservation of Documents, Software and Things is denied.

AND NOW, this 21st day of April 2004, in consideration of the Defendant's Motion for Order of Court Directing Preservation of Documents, Software and Things (Document # 113) and the Plaintiffs' Response and Counter–Motion to Defendant's Motion For Order of Court Directing Preservation of

---

3. However, the Court notes that if the Plaintiffs' motion was to be treated as a motion to compel, it is untimely and should have been filed and addressed by the Court prior to the January 2004 trial in this matter. However, if the Plaintiffs are seeking to conduct discovery limited to the issues regarding a theory, raised by the Defendant, that the "end-box" and/or "shroud", and not the generator blades, were the causes of the generator failure, the Court will entertain a motion to compel such discovery as this "alternative theory" of causation of the generator failure which initially became an important issue during the first trial in this matter. Such motion shall be filed within twenty days from the date of the attached order with a response from the Defendant due within ten days thereafter.

Documents, Software and Things (Document # 119) and in accordance with the foregoing Memorandum, IT IS HEREBY ORDERED that both the Defendant's and Plaintiffs' Motions are DENIED. IT IS FURTHER ORDERED that the Defendant's Motion to Strike Plaintiff's Counter Motion to Defendant's Motion For Order of Court Directing Preservation of Documents, Software, and Things (Document # 124) is DENIED as the issue raised therein is moot.