Arthur T. BUFFORD

v.

**PA. DEPT. OF TRANSPORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 27, 1995.

Decided Jan. 25, 1996.

G. Michael Thiel, Deputy Attorney General, for Appellant.

Arthur T. Bufford, pro se, as Appellee.

Before DOYLE and NEWMAN, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

The Department of Transportation (DOT) appeals an order of the Court of Common Pleas of Dauphin County which denied its motion for post-trial relief.

On October 11, 1989, Arthur T. Bufford was notified by DOT that he had failed to pay a traffic ticket issued to him in the State of Delaware. In that notice, DOT stated that Bufford's driver's license would be suspended on November 15, 1989, unless he paid the citation and provided DOT with a receipt verifying that payment had been made. Subsequently, Bufford paid the citation and forwarded documentation of that fact to DOT. Bufford assumed that his pending suspension had been resolved. However, on February 3, 1990, Bufford was stopped by the United States Park Police in Washington D.C., who, after searching the National Crime Information Network, discovered that Bufford's license had been suspended. Bufford was arrested for driving with a suspended license, detained by the D.C. police for a short period of time and was issued a $50.00 citation.

After his arrest, Bufford wrote to DOT to explain that he had paid the ticket in a timely fashion, but DOT did not respond. Bufford's driving privileges remained suspended incorrectly until sometime in April of 1991, when his license was reinstated.

As the result of the bureaucratic bungling, Bufford filed a complaint in trespass in the common pleas court in December 1990 asserting that DOT negligently suspended his drivers license and, as a result, he was subjected to arrest, detention and false imprisonment. DOT filed preliminary objections asserting that it was immune from suit, which were overruled by the trial court on September 4, 1991. The trial court held that Bufford's driving record was personal property and, therefore, the personal property exception [1] to the Commonwealth's general grant of immunity applied. Rejecting DOT's arguments that because Bufford was not harmed by the record itself the personal property exception did not apply, the trial court opined:

It is therefore absurd to speak of an inaccuracy or deficit in the factual information contained in a file as not being the 'occasion of injury' in a case such as the one currently under review. The only alternative interpretation of § 8522(b)(3) would be to say that files and records cannot be the occasion for an injury unless they physically fell off a cabinet and hit someone on the head, or unless a particular document gives a handler a paper cut, which results in blood poisoning....

. . . .

It was the inaccurate information contained in [Bufford's] file ... that led directly to the injury. Also, the 'care' and 'custody' of the records in question *were* at fault in the instant case, unless one attempts to assert that the updating and revising of open files, as new facts become known and old ones become obsolete, does not come under the heading of 'care, custody, and control.' Any who would contend this should be compelled to explain just who *is* responsible for the work of such corrections and updating, if not the agency

that has actual custody of the files. (Emphasis in the original.)

(Trial Court Opinion, September 4, 1991, at 10–11, 13–14; Reproduced Record (R.R.) at 37–38, 40–41.) DOT later filed a motion for summary judgment again raising the immunity issue, which was denied by the trial court for the same reasons as the court had denied DOT's preliminary objection.

On October 21, 1994, a bench trial was commenced, with Bufford representing himself pro se. Bufford testified and presented several exhibits; he presented no additional witnesses. DOT moved for a compulsory nonsuit, which the trial court denied. DOT did not present any witnesses in support of its position and did not introduce any documents into the record. After closing arguments, the trial court entered an order in favor of Bufford. The order provided as follows:

1. We adopt the rationale ... as set forth by the panel of this Court on September, 4 1991.

2. We accept the facts as testified to by the Plaintiff in this matter and have allowed him to amend his complaint to conform his pleadings to the evidence presented today.

3. PennDOT provided no witnesses or testimony to contradict any testimony or exhibits presented by the Plaintiff.

4. We award damages to Plaintiff ... in the amount of $50,000.

(Trial Court Order, October 21, 1994; R.R. at 87.)

DOT filed a post-trial motion asserting the trial court erred in denying its motion for compulsory non-suit. DOT argued that the trial court erred in holding that sovereign immunity was not conferred on the Commonwealth. In addition, DOT claimed that Bufford did not demonstrate that DOT was negligent or show that he sustained any actual damages. The trial court denied DOT's post-trial motions, concluding on the basis of its September 4, 1991 opinion that it properly held that sovereign immunity was inapplicable in this instance and that Bufford sustained his burden of proof with respect to

---

**1.** Section 8522(b)(3) of the Judicial Code (Code), 42 Pa.C.S. § 8522(b)(3).

DOT's negligence and his entitlement to damages. This appeal followed.

On appeal, DOT raises the following issues: (1) the trial court erred in adopting the court's September 4, 1991 opinion and holding that sovereign immunity was inapplicable; (2) the law does not recognize a cause of action in negligence, when the only damages sought by a plaintiff are for economic loss; and (3) Bufford failed to sustain his burden of proof for the elements of a cause of action on grounds of negligence.

■ Although the Commonwealth and its agencies are generally shielded by the defense of sovereign immunity, the Legislature has waived that defense when the circumstances of the case fall within certain exceptions. Section 8522 of the Code, 42 Pa.C.S. § 8522. To impose liability on a Commonwealth party, (1) the alleged negligent act must involve a cause of action that is recognized at common law or by a statute, and (2) the case must fall within one of exceptions to sovereign immunity listed in Section 8522(b) of the Code, 42 Pa.C.S. § 8522(b). *Moser v. Heistand*, 168 Pa.Cmwlth. 109, 649 A.2d 177 (1994), *petition for allowance of appeal granted in part*, 540 Pa. 306, 657 A.2d 915 (1995). And, we have held that the exceptions to sovereign immunity must be strictly construed and narrowly interpreted. *Bruce v. Department of Transportation*, 138 Pa. Cmwlth. 187, 588 A.2d 974 (1991), *petition for allowance of appeal denied*, 533 Pa. 626, 620 A.2d 492 (1993).

■ The critical issue before the Court is not whether DOT was negligent in maintaining Bufford's record; clearly, as found by the trial judge, there was negligence in this case, such that it would support a common law cause of action. That determination at the conclusion of the bench trial, however, was only the first of two requirements; the other is that the negligence established must be within one of the eight exceptions set out by the General Assembly in the Judicial Code.

The particular exception to sovereign immunity at issue here provides as follows:

**(b) Acts which may impose liability.—** The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

**(3) Care, custody or control of personal property.—**The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency.

Section 8522(b)(3) of the Code, 42 Pa.C.S. § 8522(b)(3). This Court has held that the personal property waiver only applies in cases where the personal property **itself** causes the plaintiff's injury; the personal property must be involved in the chain of causation. *Sugalski v. Commonwealth*, 131 Pa.Cmwlth. 173, 569 A.2d 1017 (1990); *Nicholson v. M & S Detective Agency, Inc.*, 94 Pa.Cmwlth. 521, 503 A.2d 1106 (1986).

For example, in *Nicholson*, after a security guard employed by a detective agency assaulted a bank employee during a robbery, the employee sued the Commonwealth, asserting that the State Police failed to perform its statutory duty of preventing detective agencies from hiring criminals. The security guard had an extensive criminal history, which the State Police would have had to discover if it had examined its own criminal records. On appeal, this Court rejected an argument that the criminal record of an individual, which is intangible personal property, was within the personal property exception to sovereign immunity. We reasoned that the plaintiff was not directly injured by the criminal records, but was instead injured by the State Police's negligent search of its records. Because the records **themselves** did not cause the injury, we concluded that the personal property exception was inapplicable.

In the instant case, DOT argues that the personal property exception does not apply because the personal property at issue, Bufford's driving **record** in DOT's possession, did not itself cause Bufford's injuries. Any injury inflicted on Bufford was a result of the alleged negligence of DOT's staff in maintaining Bufford's driving records and not the

record itself. On the other hand, Bufford argues that DOT's records did not have to literally "fall on his head" to bring this case within the personal property exception; moreover, the harm he suffered was directly related to DOT's negligent **management** of its records.

What can be distilled from the two views is the parties' difference over the meaning of the phrase, "the care, custody or control of personal property." DOT argues, in effect, that the term "personal property" is tantamount to tangible personal property, that is, *corporeal* personal property as distinguished from *incorporeal* personal property. Bufford's position, on the other hand, is that not only is the personal property *incorporeal,* but that "care, custody or control of personal property" means that he has a property interest in having his records **correctly** maintained, i.e., that DOT's records must properly reflect his correct status as a driver. These records were maintained by DOT, of course, and they might have been properly kept in a physical manner, but they were not accurately kept because of some negligent act or omission by a DOT employee, that is, the records did not reflect what Bufford's suspension records **should have been.**

Here, the parties agree that DOT did, in fact, suspend Bufford's driver's license and that DOT recorded that suspension. It was likewise established that the suspension information was made available to third parties, such as police departments and insurance companies. The trial court accepted Bufford's testimony that he provided DOT with the documents needed to avert that suspension. Accordingly, the trial court determined that DOT negligently suspended Bufford's license, or at least negligently failed to reinstate his license when the verifying documents establishing that Bufford had paid the fine were received by DOT.

This Court, however, has held that alleged negligent, erroneous and inaccurate examinations by a Commonwealth agency, with allegedly erroneous reports, are outside the exceptions to sovereign immunity. In *Safeguard Mutual Insurance Co. v. Insurance Commissioner,* 48 Pa.Cmwlth. 235, 410 A.2d 84 (1980), we held that the Commonwealth was immune from suit where an insurer sought to recover the costs of an alleged erroneous, inaccurate and incompetently performed examination ordered by the Insurance Commissioner. The Court in *Safeguard* determined that the allegedly erroneous report of the Commissioner was not within any exception to sovereign immunity. Similarly, in *Bendas v. Upper Saucon Township,* 127 Pa.Cmwlth. 378, 561 A.2d 1290 (1989), a case involving governmental immunity, we held that a local agency was immune from suit for negligently issuing a sewage permit and negligently testing a landowner's property, since the alleged negligent acts did not fit into any immunity exception.[2]

Although DOT disputes the trial court's conclusion that it negligently suspended Bufford's license, even assuming *arguendo* that DOT was negligent, in our view, Bufford was harmed either by DOT's negligent decision to suspend his license or by not properly reinstating it in a timely fashion.

Like the negligent management of records in *Nicholson,* the negligent, incompetently performed examination in *Safeguard,* and the negligent testing in *Bendas,* DOT's negligence here, through its employees, does not fit into any exception to sovereign immunity, because the inaccurate driving record, at most, only facilitated Bufford's injury by communicating DOT's inaccurate suspension record to third parties. Further, regardless of the legitimacy of the suspension or DOT's failure to reinstate, what the record reflected

2. This Court has also held that a Commonwealth agency is immune from suit for negligent regulation and negligent policies. *Kline v. Pennsylvania Mines Corp.,* 120 Pa.Cmwlth. 7, 547 A.2d 1276 (1988) (DER was immune from an action alleging negligent regulation of a mine destroyed by an explosion, since DER did not own the mine or a vehicle involved in the blast, and the personal property and real property exceptions were thus inapplicable); *Shakoor v. Department of Transportation,* 63 Pa.Cmwlth. 571, 440 A.2d 647 (1981) (DOT's failure to revoke the registration of an automobile owned by an uninsured motorist constituted a negligent policy and activity only, and was, therefore, not a dangerous condition of the highways under Section 8522(b)(4) of the Code, 42 Pa.C.S. § 8522(b)(4)).

was the actual status of Bufford's driver's license at the time he was arrested; it did not, technically, erroneously reflect DOT's actual record. What was recorded was actually sent out; it was what was recorded that was wrong.

While we do not condone DOT's inept behavior in this matter, we must conclude that the trial court erred in holding that this case fell within the personal property exception to sovereign immunity and, therefore, that immunity was waived. To hold otherwise would create a situation where, each time a Commonwealth agency makes a negligent decision and then records that decision in a public document, or overlooks something in an examination of its records, or further, negligently records and stores data which is in any way inaccurate, immunity would be waived under the personal property exception. That exception would thus become a mechanism for the recovery of damages inflicted by administrative decision making and the negligent recordation of any information first stored and then disgorged by any Commonwealth agency, and we hold that the General Assembly did not intend such a result.

Accordingly, the trial court's order is reversed.[3]

### ORDER

NOW, January 25, 1996, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is hereby reversed.

This decision was reached before the resignation of NEWMAN, J.

---

**3.** Because of our disposition of this case, we     need not consider DOT's remaining issues.