32 A.3d 687

**Dawn A. PYERITZ, Administratrix of the Estate of Daniel E. Pyeritz, Deceased, and Dawn A. Pyeritz, Parent and Natural Guardian of Nicole L. Pyeritz, a Minor, and Christopher E. Pyeritz, a Minor, and Dawn A. Pyeritz, an individual, in her own Right, Appellants**

v.

**COMMONWEALTH of Pennsylvania, State Police Department of the Commonwealth of Pennsylvania, Col. Jeffrey B. Miller, Commissioner, Pennsylvania State Police, Pennsylvania State Police Troopers James Custer and Daniel Ekis, Pennsylvania State Police Corporals James Caccimelio and Andre Stevens and Pennsylvania State Police Lieutenant Charles Depp, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 2009.

Decided Nov. 23, 2011.

82

Michelle Helene Lally, for Dawn A. Pyeritz.

Kermal A. Mericli, John G. Knorr, III, Harrisburg, Thomas L. Donahoe, Jr., PA Office of Attorney General, for State Police of the Commonwealth of Pennsylvania.

Louis C. Long, Pietragallo, Gordon, Alfano, Bosick & Raspanti, L.L.P., Pittsburgh, for Appellee Amicus Curiae, Pennsylvania Defense Institute.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice McCAFFERY.

In this case, Appellants sued Appellees based on the destruction of personal property, to wit, a black nylon tree stand safety harness, or belt, that allegedly was crucial evidence in a separate civil action. The Pennsylvania State Police ("State Police") had seized this item during a criminal investigation of a suspicious death. A state trooper had agreed to retain the belt in the custody of the State Police, apparently for a longer period of time than permitted by internal State Police regulations, for Appellants' later use. However, the belt was destroyed before Appellants' counsel asked for its return. Appellants sued, and the trial court granted summary judgment to Appellees, which judgment the Commonwealth Court affirmed. The Commonwealth Court held, *inter alia,* that no cause of action exists against a third party—someone other than the original alleged tortfeasor—for negligent spoliation of evidence. We granted review, and now hold that Pennsylvania law does not recognize a cause of action for negligent spoliation of evidence.

84

■ Because this is an appeal from the affirmance of the grant of summary judgment, we view the record in the light most favorable to Appellants, as they were the non-moving parties. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 983 A.2d 652, 657 (2009). When so considered, the record reveals the following. Decedent, Daniel Pyeritz, left his brother's home near Markleysburg in Fayette County during the early morning hours of October 30, 2001, to go hunting. He drove his four-wheel drive vehicle into the woods, climbed up a tree to a tree stand approximately 15 feet above the ground, and lashed himself to the tree stand with the black nylon belt at issue here.[1] When Mr. Pyeritz failed to return to his brother's house at the expected time, a search party was formed; Mr. Pyeritz was found dead at the bottom of the tree. The belt had ripped in two; half of it was found around Mr. Pyeritz's waist, and the other half was still in the tree stand. At the time of his death, Mr. Pyeritz was 47 years old, married to Appellant Dawn Pyeritz, and the father of one minor child and one adult child, Appellants Nicole L and Christopher E. Pyeritz, respectively. A high-school graduate, Mr. Pyeritz had worked for 16 years for U.S. Airways as a baggage handler, and at the time of his death, he earned approximately $55,000 a year.

When they found Mr. Pyeritz's body, the searchers called the State Police, and Appellee Trooper Daniel Ekis ("Trooper Ekis") was assigned to the investigation. Trooper Ekis took the two pieces of the tree stand belt into custody and logged them into evidence at the State Police barracks in Uniontown, where they were placed in two separate manila envelopes and lodged in the evidence room. Shortly after Mr. Pyeritz's death, and during the pendency of the criminal investigation into the death, Appellants hired counsel to investigate pursuing a civil suit. Counsel for Appellants sent Trooper Ekis a letter in November 2001, stating, "Because of the extreme need to see that there is no spoliation of this evidence, I may ask you to retain the harness for the indefinite future, even

---

1. A tree stand is a platform in a tree from which a hunter can wait undetected for deer or other prey.

after the inquest, if you are able to do so." Letter dated November 27, 2001, from Michelle H. Lally, Esq., to Trooper Ekis. Trooper Ekis informed counsel that there would be a coroner's jury proceeding to determine the cause and manner of death, and that until that proceeding ended, the pieces of the belt could not be released from State Police custody. In January 2002, Appellants' counsel and a professional photographer went to the Uniontown barracks and took photographs of the two separate pieces of the belt. On May 21, 2002, a representative of one of the putative manufacturers of the belt, accompanied by Appellants' counsel, also took photographs of the two belt pieces at the Uniontown barracks.

An inquest was eventually held approximately one year later, in November 2002, after which the coroner's jury determined that the manner of death was an avoidable accident. Shortly after the coroner's jury rendered its verdict, still in November 2002, Appellants' counsel asked Trooper Ekis to keep the pieces of the belt in the evidence room, and Trooper Ekis agreed to the request. As Trooper Ekis testified at his deposition, "Well, I first said that you guys could have the evidence, and you [Appellants' counsel] said could we keep it at the barracks until you made a determination through the civil case, and I said we would keep it in the evidence room." Deposition of Trooper Daniel Ekis, 10/6/03, at 30. Trooper Ekis placed the pieces of the belt back in the evidence room at the Uniontown barracks, and made a notation on a clipboard in the evidence room where the belt was being stored that the belt was to be released either to Appellant Dawn A. Pyeritz or to her counsel. *Id.* at 31.

In June 2003, the Uniontown barracks were relocated to a new building. All of the evidence in the evidence room at that time, including the two pieces of the belt, was transferred to the new facility. At some point prior to this relocation but after having agreed to keep the belt in the evidence room, Trooper Ekis was transferred to a barracks in Waynesburg. As a result, the investigation into Mr. Pyeritz's death was reassigned to other troopers, with responsibility for the case eventually being given to Appellee Trooper James Custer

("Trooper Custer"). In July 2003, Trooper Custer, with the approval of Appellee Corporal James Caccimelio, destroyed the two pieces of the belt, presumably pursuant to the State Police Evidence Guidelines, which require that within three months after an investigation is completed, the investigating officer is to notify the custodial officer, who is to ensure that any property in State Police custody be returned to its owner, escheated to the Commonwealth, donated to the state treasury, or destroyed.

In August 2003, approximately ten months after the inquest, counsel for Appellant asked for the pieces of the belt and learned that they had been destroyed. All that remained were the photographs of the belt and two boxes in which the pieces of the belt had previously been stored, on which the names of two tree stand belt manufacturers had been written. Appellants filed a products liability suit in federal court in September 2003, against these two manufacturers. Appellants and the manufacturers settled the suit in November 2003, for $200,000.

In October 2003, prior to that settlement, Appellants commenced the instant action by filing a praecipe for writ of summons against the State Police and various troopers. In their single-count complaint filed on October 21, 2004, Appellants styled their action as one in negligence "for failure to preserve evidence necessary for plaintiffs' third-party claim." Appellants averred that they had suffered the following damages:

1) loss of probable expectancy of recovery in the action against the manufacturers of the belt; 2) significant impairment of the action against the manufacturers of the belt; 3) deprivation of the belt resulting in Appellants' inability to obtain expert testimony; and 4) inability to prove the action against the manufacturers of the belt.

Complaint at ¶¶ 42, 45.

Appellants sought damages as follows:

[1) ] ... jointly and severally, in an amount that fully compensates the Plaintiffs and adequately punishes the

Defendants; or, in the alternative, [2) ] in an amount in which the damages that might have been awarded in the underlying suit are discounted by the probability of success in that case had Defendants not destroyed the evidence; or, in the alternative [3) ] the statutory maximum recoverable in cases where sovereign immunity is waived; or, in the alternative [ (4) ] in an amount this Honorable Court deems just.

*Id.* at pp. 13, 15.[2]

In September 2006, Appellees moved for summary judgment, arguing that Pennsylvania does not recognize a cause of action for negligent spoliation of evidence. During the course of her presentation at the hearing on the summary judgment motion, Appellants' counsel argued that a bailment had been created, which gave rise to a special relationship which, in turn, would warrant holding Appellees liable for spoliation. Appellants' counsel stated it was Appellees' counsel's opinion that the only recovery available was $19.82, the value of the belt, and that such an opinion was "laughable." Notes of Testimony, 6/22/07, at 12. Appellants' counsel further argued that the value of the destroyed property was the value of the underlying lawsuit. *Id.* at 23–24. After considering Appellants' response to the motion and after hearing oral argument, the trial court entered summary judgment in Appellees' favor. Appellants appealed to Commonwealth Court, which affirmed. *Pyeritz v. Pa. State. Police,* 956 A.2d 1075 (Pa.Cmwlth.2008).

Appellants sought allowance of appeal, and we granted review of the following issue:

2. It is thus clear from Appellants' complaint, including the two *ad damnum* clauses, that they seek damages measured by the effect that the loss of the belt had upon their underlying tort action against the putative manufactures. Appellants do not rely upon the allegations in their complaint to support a cause of action for breach of bailment independent from their claim for negligent spoliation. Rather, Appellants argue that the existence of the bailment created a "special relationship" that would entitle them to damages under the spoliation theory. *See* discussion infra. Because Appellants have expressly adopted a measure of damages based solely upon the existence of a cause of action for negligent spoliation of evidence, we do not find it necessary to address further the significance of the existence or non-existence of a bailment.

Whether Pennsylvania recognizes, and if so whether Petitioners have alleged, a cause of action for negligent spoliation of evidence?

*Pyeritz v. Pa. State Police*, 600 Pa. 640, 969 A.2d 1183 (2009).[3]

■ Our standard of review of the grant of summary judgment is *de novo* and our scope of review is plenary. *Liss & Marion, supra* at 657. A motion for summary judgment is properly made if "there is no genuine issue of any material fact as to a necessary element of the cause of action." Pa. R.C.P. 1035.2(1). Summary judgment may be entered only when, even after examining the record in the light most favorable to the non-moving party, and resolving of all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law. *Liss & Marion, supra* at 657. The grant of summary judgment may be reversed only if the lower court committed an error of law. *Id.*

■ "Spoliation of evidence" is the non-preservation or significant alteration of evidence for pending or future litigation.[4] When a party to a suit has been charged with spoliating evidence in that suit (sometimes called "first-party spoliation"), we have allowed trial courts to exercise their discretion to impose a range of sanctions against the spoliator. *See Schroeder v. Commonwealth, Department of Transportation,*

3. We also granted review of the following three issues, which we do not reach, other than as discussed in footnotes 2 supra and 7 infra, in light of our holding regarding the negligent spoliation claim: (a) whether genuine issues of material fact exist which would preclude the entry of summary judgment; (b) whether the State Police breached an implied contract for bailment of evidence which was Appellants' personal property, thus subjecting the State Police to liability if the evidence was subsequently negligently destroyed; and (c) whether the personal property exception to state sovereign immunity, 42 Pa.C.S. § 8522(b)(3), applies only if the property in question causes the plaintiff's injuries, or does it suffice that plaintiff's injuries are caused by the Commonwealth's care, custody, or control of the property.

4. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999) ("Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." (citing Black's Law Dictionary 1401 (6th ed.1990))).

551 Pa. 243, 710 A.2d 23, 27 (1998).[5] However, we have never imposed a duty in tort not to commit negligent spoliation of evidence, and we now hold that such a cause of action is not viable in Pennsylvania.

 A cause of action in negligence requires a showing of four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage. *Krentz v. Consolidated Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 27 (2006). The duty element requires us to make a policy judgment whether it is in the public interest to impose damages on those who have failed to conform their behavior to a particular standard. *See Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 681 (1979) ("In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than 'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered. . . .") (quoting *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 764 (1974)).[6] In deciding whether to impose a duty, we consider the following five factors: (1) the relationship between the parties; (2) the utility of the defendant's conduct; (3) the nature and foreseeability of the risk in question; (4) the consequences of imposing the duty; and (5) the overall public interest in imposing the duty. *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 747 (2005).

 Here, the first two factors militate against the imposition of a duty. First, the relationship between the parties was

---

5. *See also Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 29–30 (Pa.Super.2006) (affirming the grant of summary judgment on a manufacturing defect claim for failure to take action to preserve allegedly defective device at issue). *Cf. McHugh v. McHugh*, 186 Pa. 197, 40 A. 410, 411 (1898) ("The spoliation of papers and the destruction or withholding of evidence which a party ought to produce gives rise to a presumption unfavorable to him, as his conduct may properly be attributed to his supposed knowledge that the truth would operate against him.").

6. *See also Krentz, supra* at 28 ("[D]uty is a question of whether any liability may attach to the defendant for the plaintiff's harm.").

grounded in a request by counsel for one party to an agent of the other. The acquiescence to the request resulted in the gratuitous acceptance of control over certain personal property. While it may be understandable for members of an accident victim's family to rely upon the representations of a member of the Commonwealth's state police force, such reliance is not necessarily justifiable as a matter of law so as to constitute a partial basis for imposing a duty upon the Commonwealth itself. Further, because it was Appellants' counsel who directly engaged with a state trooper in securing the state police barracks as the repository of the evidence, a greater exercise of care on the part of Appellants' counsel may have been warranted in determining the limits of a reasonable expectation of retention of the evidence. Secondly, with respect to the utility of the conduct in question, Appellees did retain the evidence through the inquest and for an additional nine months. Their conduct in this regard served the public interest in the prompt and thorough investigation of a possible crime. The expectation that the state police could be utilized to safeguard evidence that was no longer needed for criminal investigative purposes was misplaced and served no legitimate police function.

Turning to the third, fourth, and fifth factors, upon review and consideration, we conclude that, on balance, the negative consequences of imposing a duty not to commit negligent spoliation of evidence outweigh any benefits the recognition of this tort might afford. Although it may have been reasonably foreseeable to the troopers that the loss of the evidence might harm Appellants in their quest for damages in a civil lawsuit against the belt's manufacturer, we hold that as a matter of public policy, this is not a harm against which Appellees should be responsible to protect. The primary reason is that the tort would allow the imposition of liability where, due to the absence of the evidence, it is impossible to say whether the underlying litigation would have been successful. It could very well be true in this case, for example, that if the belt had not been destroyed, it would have undermined Appellants' suit against the manufacturers and they would not have realized

even the $200,000 settlement they now have in hand. Of course, in some cases, one party may have already finished testing the evidence by the time it is destroyed, or as here, photographs or other representations of the evidence may still exist. However, depictions are an inadequate substitute for the evidence itself, as other parties cannot inspect and test the evidence independently, which deprives them of the raw material they need to mount a potentially successful claim or defense. If we were to recognize the tort, the inability of the parties to assess meaningfully the impact of the missing evidence on the underlying litigation would result in potential liability based on speculation.

To the extent recognition of the tort would encourage the preservation of evidence, that benefit is outweighed by the financial burden the tort would impose. If it were recognized, businesses and institutions would be forced to preserve evidence, at considerable expense, for a myriad of possible claims that might never be brought. Moreover, this goal can be achieved under existing law. Although Pennsylvania law does not permit an equity action for discovery, *see Cole v. Wells*, 406 Pa. 81, 177 A.2d 77, 80 (1962), parties to pending and prospective suits, upon an appropriate showing, may be able to obtain injunctive relief to preserve evidence. *See generally Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D.Pa.2004) (applying federal law and listing factors for obtaining such relief). In addition, parties to suits have an avenue to obtain physical evidence from non-parties, even pre-complaint, under the Rules of Civil Procedure. *See* Pa.R.C.P. 4003.8, 4009.21–4009.27.

Although the question we consider here is one of first impression for this Court, our holding is supported by our decisions in related contexts, by the decisions of lower Pennsylvania courts, and by the decisions of other states' courts. For example, in *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 564–65 (1999), we refused to require a real estate agent, who had merely relayed the results of a home inspection, to investigate the reliability of the inspection. Similarly, in *Stupka v. Peoples Cab Co.*, 437 Pa. 509, 264 A.2d 373, 374 (1970), we rejected

an invitation to impose liability on a taxi driver, whose passenger was injured in an accident caused by another driver, for failing to obtain the name or license number of the other driver. Likewise, in *Yania v. Bigan,* 397 Pa. 316, 155 A.2d 343, 346 (1959), we held that a witness to a drowning, who was not a relative of the victim, had no duty to rescue the victim. And in *Ginsburg v. Halpern,* 383 Pa. 178, 118 A.2d 201, 202 (1955), we declined to recognize a cause of action in tort for perjury or conspiracy to commit perjury, which essentially was a refusal to permit the imposition of liability on a party for having altered or modified evidence.

Likewise, our lower appellate courts have refused to recognize the tort of negligent spoliation. The Commonwealth Court rejected the tort in this case, and the Superior Court determined the tort was untenable, absent a "special relationship" between the plaintiff and defendant, in *Elias v. Lancaster Gen. Hosp.,* 710 A.2d 65, 69 (Pa.Super.1998). Although we disagree with the Superior Court that a "special relationship" can be sufficient to impose a duty not to commit negligent spoliation, our decision here still finds support in the *Elias* court's general rule that no such duty can be imposed in tort.

Additionally, as noted by the Massachusetts Supreme Judicial Court in *Fletcher v. Dorchester Mut. Ins. Co.,* 437 Mass. 544, 773 N.E.2d 420, 424 & n. 9 (2002) (citing cases), the overwhelming majority of other states that have considered the tort have rejected it. Since *Fletcher,* additional jurisdictions have considered the tort, with the majority continuing to reject it. *See Lips v. Scottsdale Healthcare Corp.,* 224 Ariz. 266, 229 P.3d 1008, 1009 (2010) (no cause of action for third-party negligent spoliation of evidence); *Downen v. Redd,* 367 Ark. 551, 242 S.W.3d 273 (2006) (same); *Ortega v. City of New York,* 9 N.Y.3d 69, 845 N.Y.S.2d 773, 876 N.E.2d 1189, 1197 (2007) (same, stating "[w]e are not persuaded that it would be sound public policy to create a new tort that shifts liability from responsible tortfeasors to government entities that serve as repositories of evidence that may or may not be relevant in future civil cases"). *But see Hannah v. Heeter,* 213 W.Va. 704, 584 S.E.2d 560 (2003) (permitting claim against third

parties for negligent spoliation of evidence, but not against first parties).

In summary, we conclude that to date, Pennsylvania law has not recognized a cause of action for negligent spoliation of evidence, and we decline to do so now. Because the tort would permit the imposition of liability based on speculation, would create the potential for the proliferation of litigation, and would confer a benefit already sufficiently achievable under existing law, it is in the overall public interest not to recognize the tort.[7] Accordingly, we affirm.

Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices SAYLOR and BAER join the opinion.

Justice EAKIN files a concurring opinion.

Justice TODD files a concurring opinion.

Justice EAKIN, concurring.

While I concur with the majority's decision to affirm the Superior Court, I do not believe the analysis of negligent spoliation of evidence effectively disposes of all the issues on which we granted allocatur, namely:

(1) Whether the personal property exception to state sovereign immunity, 42 Pa.C.S.A. § 8522(b)(3), applies only if the property in question causes the plaintiff's injuries, or does it suffice that plaintiff's injuries are caused by the Commonwealth's care, custody, or control of the property?

(2) Whether genuine issues of material fact exist which would preclude the entry of summary judgment?

---

7. Because we hold today that Pennsylvania does not recognize a cause of action for negligent spoliation of evidence, it is unnecessary to determine, given such a non-existent cause of action, whether the personal property exception to state sovereign immunity, 42 Pa.C.S. § 8522(b)(3), applies only if the property in question causes the plaintiff's injuries, or whether it suffices that the plaintiff's injuries are caused by the Commonwealth's care, custody, or control of the property.

(3) Whether the State Police breached an implied contract for bailment of evidence which was Petitioners' personal property, thus subjecting the State Police to liability if the evidence was subsequently negligently destroyed?

(4) Whether Pennsylvania recognizes, and if so whether Petitioners have alleged, a cause of action for negligent spoliation of evidence?

*Pyeritz v. Pa. State Police,* 600 Pa. 640, 969 A.2d 1183, 1184 (2009) (*per curiam*).

The Commonwealth enjoys immunity from suit unless the injury in question lies within one of the exceptions provided by the legislature. Pa. Const. art. I, § 11; 42 Pa.C.S. §§ 8521–22. Appellant contends this suit is within the personal property exception, which provides the sovereign immunity defense may not be applied to claims for damages caused by:

> (3) **Care, custody or control of personal property.**—The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

42 Pa.C.S. § 8522(b)(3). The legislature's intent in enacting the Sovereign Immunity Act was to shield government from liability except as provided for in the statute itself, and we must apply a rule of strict construction in interpreting the exceptions. *Jones v. Southeastern Pennsylvania Transportation Authority,* 565 Pa. 211, 772 A.2d 435, 440 (2001).

It is well established that the personal property exception only applies where the property itself causes the injury. *See, e.g., Pennsylvania State Police v. Klimek,* 839 A.2d 1173, 1175 (Pa.Cmwlth.2003); *Bufford v. Pennsylvania Department of Transportation,* 670 A.2d 751, 753 (Pa.Cmwlth.1996); *Sugalski v. Commonwealth,* 131 Pa.Cmwlth. 173, 569 A.2d 1017, 1019 (1990); *Nicholson v. M & S Detective Agency, Inc.,* 94 Pa.

Cmwlth. 521, 503 A.2d 1106, 1108 (1986). That is not what occurred in this case. While the belt may have been involved in decedent's death, the belt was not in the care and custody of the Commonwealth at that time. The instant suit alleged injury to potential economic recovery from the destruction of the belt fragments, not the injury resulting in the death of decedent. It was not the property itself, but rather the alleged mismanagement of the property that caused the injury complained of; thus, the personal property exception to sovereign immunity does not apply.

Appellant's bailment argument, which I believe is separate from the negligent spoliation theory, must also fail.

"A bailment is a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it." Therefore, a cause of action for breach of a bailment agreement arises if the bailor can establish that personalty has been delivered to the bailee, a demand for return of the bailed goods has been made, and the bailee has failed to return the personalty.

*Price v. Brown*, 545 Pa. 216, 680 A.2d 1149, 1151–52 (1996) (citations omitted).

In this case, the bailment relationship could not be established because the trooper had no authority to bind the Commonwealth in contract.

[T]he Commonwealth or its subdivisions and instrumentalities cannot be estopped "by the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts which require legislative or executive action." As a result, "(p)ersons contracting with a governmental agency must, at their peril, know the extent of the power of its officers making the contract."

*Central Storage & Transfer Co. v. Kaplan*, 487 Pa. 485, 410 A.2d 292, 294 (1979) (citations omitted). The Commonwealth Court noted State Police disposition of property regulations

did not authorize Trooper Ekis' decision to retain the belt fragments, and actually forbade such an act. *Pyeritz v. Pa. State. Police*, 956 A.2d 1075, 1082 n. 2 (Pa.Cmwlth.2008). The fact that Trooper Ekis had apparent authority to keep the evidence is not dispositive; he had no actual authority to obligate the State Police to keep the evidence for appellant. As such, appellant's bailment claim fails.

Finally, there is no need to recognize a separate cause of action for negligent spoliation. Importantly, the issue on which we granted allocatur implies recognition of a general cause of action for negligent spoliation of evidence. Within the duty analysis for such a tort, the parties' relationship, conduct utility, and the foreseeability of the risk would be unique for each situation. Thus, the question of whether to recognize a legal duty to preserve evidence must go beyond the parameters of the current factual scenario; not all spoliation of evidence claims involve evidence handled or mishandled by the government, which often has the luxury of claiming sovereign immunity. Rather, recognition of a separate claim for negligent spoliation of evidence would have a profound impact upon private parties, requiring them to protect and preserve items that may or may not be evidence in a future civil case. Our law generally refuses to impose civil liability for failing to act for another's benefit. Consequently, there is no reason to create a *per se* duty requiring third parties to anticipate future civil litigation, particularly when a sufficient remedy for such negligent actions is available through traditional bailment and negligence claims.

The personal property exception to sovereign immunity is inapplicable, Trooper Ekis had no authority to obligate the Commonwealth to preserve the evidence, and there is no need to create a separate cause of action for negligent spoliation of evidence. There being no dispute about the material facts, I agree the trial court did not err in granting summary judgment, and concur with the majority's decision to affirm the Superior Court.

Justice TODD, concurring.

I join the Majority Opinion with one exception. I disagree with the majority's suggestion that Appellants' counsel, in relying on the state trooper's agreement to retain the evidence at the state police barracks, somehow lacked due care. *See* Majority Opinion at 693. Indeed, I believe counsel can and should be able to reasonably rely on the assurances of law enforcement personnel. Nonetheless, I agree, for purposes of this question in tort, the state trooper's assurances do not control the issue of the Commonwealth's liability.