J-A16002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE J. BYWATER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CONEMAUGH MEMORIAL MEDICAL | : | |
| CENTER, CONEMAUGH MEMORIAL | : | |
| MEDICAL CENTER-LEE CAMPUS, AND | : | |
| DLP CONEMAUGH MEMORIAL | : | |
| MEDICAL CENTER, LLC, T/D/B/A | : | |
| CONEMAUGH MEDICAL CENTER | : | No. 1072 WDA 2023 |

Appeal from the Order Dated September 6, 2023
In the Court of Common Pleas of Cambria County Civil Division at No(s):
No. 2021-61

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: AUGUST 5, 2024**

In this slip-and-fall case, Christine J. Bywater appeals from the order granting summary judgment to the Defendants, Conemaugh Memorial Medical Center, Conemaugh Memorial Medical Center-Lee Campus, and DLP Conemaugh Memorial Medical Center, LLC.  Because Ms. Bywater offered no evidence from which a jury could reasonably find that the medical center had notice of an allegedly dangerous, icy condition in its parking lot, we affirm.

On the morning of January 14, 2019, Ms. Bywater and her sister-in-law, Payge Bywater, drove to the medical center to visit a patient at the Johnstown campus.  There was snow on the ground and salt on the medical center's sidewalks, but Ms. Bywater recalled no additional precipitation falling that morning.  **See** Depo. of Christine Bywater at 12.  Temperatures in the

Johnstown area remained below freezing for the prior week; as such, there was not a freeze-and-thaw cycle. ***See id.*** at 13.

Upon parking her car in the medical center's parking lot, Ms. Bywater exited the driver's side of the vehicle without looking down. ***See id.*** at 26. She immediately "went up and . . . came down on the side of [her] car." ***Id.*** Ms. Bywater's left shoulder and the side of her head hit the vehicle, and she fell to the ground. Payge, who was getting out of the passenger's side of the car, did not see the fall. Payge and another couple helped Ms. Bywater stand and put her in a wheelchair due to the fall.[1]

Ms. Bywater never saw ice on the ground. After she fell, Ms. Bywater looked around, and "there was nothing there." ***Id.*** at 27. When asked why she believed she had slipped on ice, Ms. Bywater responded, "Because you can't see black ice. Why else would I fall?" ***Id.***

She suffered various injuries and sued the medical center. Ms. Bywater alleged negligence based on theories of premises liability. The medical center moved for summary judgment, which the trial court granted. This timely appeal followed.

Ms. Bywater raises two appellate issues:

1. Did the trial court err by granting [the medical center's] Motion for Summary Judgment, holding that there was not a genuine issue of material fact with regards to [the medical center's] actual or constructive notice of the parking lot

---

[1] Ms. Bywater did not get the couples' names or contact information. As such, she was unable to depose them.

condition, such that the hills-and-ridges doctrine could apply?

2. Did the trial court err by granting [the medical center's] Motion for Summary Judgment, holding that there was not a genuine issue of material fact, despite [Ms. Bywater] failing to establish accumulation of black ice, a requisite to establish [the medical center's] negligence in the maintenance of their property?

Bywater's Brief at 2. We dispose of the two issues simultaneously.

According to Ms. Bywater, she established a genuine issue of material fact and made a *prima facie* case for negligence against the medical center. In her view, the medical center had actual or constructive notice of the dangerous condition in its parking lot, but she never offers any reasoning or a citation to the record to support that claim. Ms. Bywater simply announces that, based on the cold temperatures and an identified "period of snow accumulation . . . [i]t may be left to the factfinder to determine whether the duration of time from the snow accumulation indicates an adequate time to remedy the ice accumulation and develop constructive notice." ***Id.*** at 13.

What Ms. Bywater fails to recognize is that she never established that any ice was visually apparent in the parking lot in the first place. According to Ms. Bywater, although she could not see the ice, "she expressed feeling it as she slipped and stated that her clothes were wet from where she made contact with the ice." ***Id.*** at 17 (citing R.R. at 142, 144, *i.e.*, Depo. of Christine Bywater at 27, 31). In neither of those pages of testimony does Ms. Bywater state that she felt ice when she hit the ground or that her clothes were wet from contacting ice. In fact, when Ms. Bywater said she merely assumed she

fell on black ice, counsel for the medical center asked, "If you didn't see any ice, how do you know that you slipped on black ice?"  Depo. of Christine Bywater at 27.

Ms. Bywater replied, "I can't answer that question, because I don't know the answer to that question."  ***Id.***  In other words, Ms. Bywater lacked any factual basis for asserting that she had slipped on ice.  She merely presumed that, because she fell, there must have been ice beneath her.  Moreover, she then admitted that, because she never saw ice, Ms. Bywater had no knowledge of how much ice – if any – had accumulated in the parking or how large of an area was icy.  ***See id.***

Additionally, page 31 of her deposition contains no discussion of ice, whatsoever, much less how Ms. Bywater knew ice was present in the parking lot.  The only pertinent question was, "Were your clothes wet?"  ***Id.*** at 31.

"Yes . . . My back end and my one side, because I rolled over on my one side to try to get help - - to get up."  ***Id.***  There is nothing in the testimony linking the wetness of Ms. Bywater's clothes to any ice.  Thus, Ms. Bywater's contention that she produced evidence that ice was present is erroneous.  Her asserting that ice was present is only speculation.

With the absence of such evidence, we turn to the question of whether the medical center is entitled to summary judgment.

Whether a party is entitled to summary judgment presents a pure question of law.  Thus, our standard of review is *de novo*.  ***See***, ***e.g.***, ***Pyeritz v. Commonwealth***, 32 A.3d 687, 692 (Pa. 2011).  We view all facts and draw

- 4 -

all reasonable inferences therefrom in a light most favorable to the non-moving party. **See Toy v. Metropolitan Life Ins. Co.**, 928 A.2d 186, 195 (Pa. 2007).

Summary judgment is only appropriate "where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010). If a non-moving party fails to produce sufficient evidence on an issue essential to the claim and on which the non-moving party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. **Krauss v. Trane U.S. Inc.**, 104 A.3d 556, 563 (Pa. Super. 2014). "A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in [her] favor." **Id.** at 568.

In order to establish a *prima facie* case for negligence, a plaintiff must prove four elements: a duty of care imposed by law, breach of the duty of care, a causal link between the defendant's breach and the plaintiff's injuries, and actual harm. **See**, **e.g.**, **Reilly v. Tiergarten Inc.**, 633 A.2d 208, 210 (Pa. Super. 1993). At issue here is whether Ms. Bywater offered sufficient evidence to give rise to a duty for the medical center to have to remedy the alleged dangerous, icy condition in their parking lot.

Because the medical center owned the land where Ms. Bywater fell, it would only have a legally imposed duty to protect her from an icy patch in its parking lot if the medical center knew or should have known that it existed.

The trial judge in this case, The Honorable Judge David J. Tulowitzki, Ret. thoroughly and correctly opined on the issued raised by Mrs. Bywater.:

> A land possessor is subject to liability for physical harm caused to an invitee only if the following conditions are satisfied:
>
> > the land possessor knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, the possessor should expect that the invitee will not realize it or will fail to protect himself against it, and the possessor fails to exercise reasonable care to protect the invitee against the danger.
>
> *Estate of Swift v. Northeastern Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. 1997) (citation omitted). The "mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence." *Myers v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa. Super. 1992) (*en banc*), *appeal denied*, 620 A.2d 491 (Pa. 1993). An invitee must present evidence proving "either the possessor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Swift*, 690 A.2d at 722. What constitutes constructive notice depends on the circumstances of the case, but one of the most important factors to consider is the time that elapsed between the origin of the condition and the accident. *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. 2001).
>
> The hills and ridges doctrine, "as defined and applied by the courts of Pennsylvania, is a refinement or clarification of the duty owed by a possessor of land and is applicable to a single type of dangerous condition, *i.e.*, ice and snow." *Wentz v. Pennswood Apartments*, 518 A.2d 314, 316 (Pa. Super. 1986). Under Pennsylvania law "there is no absolute duty on the part of a landowner to keep his premises and sidewalks free from snow and ice at all times." *Rinaldi v. Levine*, 176 A.2d 623, 625 (Pa. 1962). Further, "there is no liability created by a general slippery condition on sidewalks. It must appear that there were dangerous conditions due to ridges or elevations which were allowed to

remain for an unreasonable length of time, or were created by defendant's antecedent negligence." *Id.*

[The Superior Court of Pennsylvania] has summarized "the doctrine of hills and ridges" as follows:

This doctrine provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition. In order to recover for a fall on an ice- or snow-covered sidewalk, a plaintiff must prove (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which eased the plaintiff to fall.

*Gilligan v. Villanova University*, 584 A.2d 1005, 1007 (Pa. Super. 1991) (citations omitted). "Absent proof of *all* such facts, a plaintiff has no basis for recovery." *Rinaldi*, 176 A.2d at 626 (emphasis in original).

Here, Ms. Bywater has presented no evidence that the snow and ice had accumulated in the parking lot into ridges or elevations that obstructed travel. Indeed, in her deposition, Ms. Bywater stated that she did not see anything in the parking lot and specifically noted that after her fall she looked for ice but could not see any leading her to conclude she slipped on black ice. [Depo. of Christine Bywater at] 12-15, 25-27 . . . As such, she has failed to present evidence from which a jury could reasonably find the necessary elements of the hills-and-ridges doctrine and as result that doctrine is inapplicable in the matter *sub judice*.

Where the hills-and-ridges doctrine cannot be relied upon by a plaintiff they must rely on traditional doctrines of tort-law negligence. Under these doctrines, Ms. Bywater must show that [the medical center] knew or by the exercise of reasonable care

- 7 -

would have discovered the condition, and should realize that it involves an unreasonable risk of harm to an invitee, and (b) should expect that the invitee will not discover or realize the danger, or will fail to protect themselves against it, and (c) failed to exercise reasonable care to protect the invitee against the danger. **Swift**, 690 A.2d 719, 722. Here, Ms. Bywater has failed to allege sufficient facts to show that [the medical center] had actual or constructive notice of the alleged dangerous condition.

In determining whether a possessor of land had actual or constructive notice "one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." **Neve**, 771 A.2d 786, 791. The duration of the hazard is important because, if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even "by the exercise of reasonable care," would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard. RESTATEMENT (SECOND) OF TORTS § 343.

In her deposition, Ms. Bywater testified that there was snow on the ground from snowfalls over the course of the days prior but notably that there was no snow or visible ice accumulation in the parking lot itself. [Depo. of Christine Bywater at] 13-15, 26-27. The weather data provided by Ms. Bywater shows that, in the two weeks prior to her fall, the data shows a total precipitation of 1.7 inches; in the 72 hours prior to her fall, it was .10 inches of precipitation; in the 24 hours prior, the temperatures rang[ed] from a high of 32 degrees to a low of 20 degrees. [Ms. Bywater's Trial Court Brief at] 7-8; Exs. A and B. This data is consistent with her testimony and establishes that, in the days immediately prior to her fall, there had been no noticeable precipitation or thaw/freeze cycle. Further, Ms. Bywater's testimony establishes that [the medical center] had maintained the parking lot by plowing and salting it and the adjacent sidewalks.

Even when the "general weather conditions" are such that a hazardous condition may materialize, constructive notice cannot be inferred from this mere possibility. **Sheridan v. Horn & Hardart Baking Co.**, 77 A.2d 362, (Pa. 1951); accord **Parker v. McCrory Stores Corp.**, 101 A.2d 377, 377-78 (Pa. 1954) (department store cannot be expected to inspect "every minute or every five minutes every entrance, aisle, corridor, and stairway in the store, in order to instantly clean up and eliminate every wet or possibly slippery, or possibly dangerous condition and every

puddle which might be found to exist anywhere in the store"). Weather conditions can only support an inference of actual or constructive notice of a hazardous condition when coupled with evidence that the defendant had knowledge of both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises. *See*, *Cohen v. Food Fair Stores, Inc.*, 155 A.2d 441, 442-43 (Pa. Super. 1959) (distinguishing *Parker*, and *Sheridan* based on testimony from a store manager that "he knew of the dangerous condition of the vestibule floor on rainy days").

Ms. Bywater's weather data shows that in the 24 hours prior to her fall temperatures were at or below freezing and that they had been so for the prior five days as well. [Ms. Bywater's Trial Court Brief at] 7-8; Exs. A and B. This evidence coupled with Ms. Bywater's deposition testimony does not support a reasonable inference of actual or constructive notice in this case. Viewed in the light most favorable to Ms. Bywater, the most the evidence establishes that a jury could reasonably infer is that the temperature had fallen enough for ice to form in the parking lot in the days prior to the fall and that, by the time of Ms. Bywater's fall, ice had in fact formed. None of the evidence indicates that [the medical center] knew or should have known that ice had actually formed in the parking lot at the time the accident occurred. Without any evidence that the black ice was observable for any significant period of time prior to the accident, a jury cannot reasonably infer that [the medical center] had either actual or constructive notice of the hazardous condition.

Finally, another serious defect in Ms. Bywater's case is her inability to state what caused her to fall. In her deposition, [she] testified that she did not see any ice prior to her fall and that when she looked around post-fall, she could not see any ice and, as a result, presumed she fell on black ice. [Depo. of Christine Bywater at] 26-27. If Ms. Bywater does not know what caused her fall, then only by conjecture and guesswork could a jury find what caused her to fall. *See*, *Rinaldi*, 176 A.2d at 626.

Trial Court Opinion, 9/6/23, at 5-10 (some punctuation omitted).

The foregoing analysis properly addresses both issues that Ms. Bywater raises on appeal, and we adopt it as the opinion of this Court. Neither issue

warrants relief, because the trial court rightly applied the governing principles of negligence law to the evidence that Ms. Bywater produced during discovery. Simply stated, if she could not see the ice that she allegedly fell upon, neither could anyone working for the medical center. If the medical center's staff could not see the ice, then the medical center neither knew nor should have known that a dangerous, icy condition existed in its parking lot on the morning of Ms. Bywater's fall. Absent that knowledge, the medical center had no duty to remove the ice. *See Swift* and *Myers*, *supra*.

Both appellate issues dismissed as meritless.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/5/2024