IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tahir Gardner,                          :
                         Appellant       :
                                        :
            v.                          :
                                        :
Terry Wealand and                       :     No. 978 C.D. 2024
Jon Fustine                             :     Submitted: April 13, 2026

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON                              FILED: May 7, 2026


Tahir Gardner (Appellant) appeals the July 1, 2024 order (Trial Court Order) of the Court of Common Pleas of Dauphin County (Trial Court) granting summary judgment in favor of Terry Wealand (Officer Wealand) and Jon Fustine (Officer Fustine) (collectively, Appellees) regarding Appellant's Complaint that raised claims of false imprisonment and violation of the Fourth Amendment of the United States Constitution against Appellees. Upon review, we affirm.

## I. Background and Procedural Posture

The Trial Court summarized the facts underlying the instant matter as follows:[1]

---

[1] In response to Defendants' [First] Motion for Summary Judgment, on October 9, 2019, the Trial Court conducted a hearing to determine whether issues of fact existed sufficient to submit Appellant's claims in this matter regarding probable cause, false arrest, and false imprisonment to a jury. *See Gardner v. Carter* (C.P., No. 2014-CV-00737-CV, filed March 26, 2020) (March 2020 Opinion) at 1; *see also* Transcript of Proceedings, October 9, 2019, Reproduced Record (R.R.) at 239-316.

On January 28, 2012, [Officer] Wealand, driving a marked police vehicle, was working with a special Street Crimes Unit in the area of North Maclay Street in Harrisburg, accompanied by officers Jon Fustine and Nicholas Ishman on the 7 p.m. to 3 a.m. shift. Shortly after midnight, [Officer] Wealand observed a stopped vehicle blocking one-way Jefferson Street. As [Officer] Wealand ran the license plate number, the vehicle drove around the block then returned to the original position. Because [Officer] Wealand's police Chevy Tahoe sat higher than the vehicle, he could observe that the driver wore a white hoodie and a white knit cap. [Officer] Wealand next observed an individual approach the vehicle and hand something to the driver. [Officer] Wealand followed the vehicle toward Emerald Street. [Officer] Wealand observed the vehicle turn without signaling. At that point, [Officer] Wealand could see a front and a rear seat passenger in the vehicle. He activated his emergency lights and initiated a traffic stop for the moving violation of the driver's failure to use a required signal when turning.

The vehicle pulled over. [Officer] Wealand positioned his police vehicle behind the vehicle, with lights activated and a spotlight directed on the stopped

---

The Trial Court filed the March 2020 Opinion in response to a previous appeal of this matter discussed *infra*. *See Gardner v. Carter* (Pa. Cmwlth., No. 413 C.D. 2020, filed March 1, 2023) (*Gardner I*). We observe that the Trial Court's opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a) (1925(a) Opinion), for the instant appeal stated that "the [T]rial [C]ourt hereby adopts [the Trial Court's] prior determination made by Memorandum Opinion dated March 26, 2020, in support of its reasons for the Order issued July 1, 2024, pursuant to Pa.R.A[].P. 1925(a). We do not contemplate filing an additional opinion currently." 1925(a) Opinion at 2 (pagination supplied), R.R. at 391. We observe further that the record and filings of the instant matter do not include a copy of the March 2020 Opinion referenced in the 1925(a) Opinion. In lieu of requiring Appellant to file a supplemental record containing the March 2020 Opinion, however, in the interest of judicial economy, in deciding the instant appeal, this Court will employ the March 2020 Opinion contained in the *Gardner I* record, which the Trial Court clearly and unambiguously identified in the 1925(a) Opinion.

2

vehicle. [Officer] Wealand and Officer Fustine exited their vehicle and walked toward the stopped vehicle. [Officer] Wealand approached on the driver's side. In addition to the lights of his vehicle, streetlights illuminated the area. The driver turned toward [Officer] Wealand's flashlight. The front seat passenger began to exit the vehicle; Officer Fustine ordered him to remain in the vehicle. [Officer] Wealand observed the reverse taillights illuminate. The driver then shifted the vehicle into reverse at which point [Officer] Wealand got a "decent" look at the driver. The vehicle backed up and collided with the police vehicle.

In an effort to distract the driver, [Officer] Wealand broke the driver's side window with his flashlight. The glass shattered into shards and fine pieces. [Officer] Wealand reached into the vehicle and grabbed the driver's face with both hands. [Officer] Wealand testified that he got a "good look" at the driver. The driver then placed the vehicle into drive as [Officer] Wealand shouted to him to stop what he was doing. With [Officer] Wealand's arms still in the vehicle, the vehicle veered toward him, causing him to be caught in the vehicle. The vehicle travelled fifteen to twenty feet, dragging [Officer] Wealand, until he rolled off.

[Officer] Wealand observed the driver at two points in the encounter: when he shone his flashlight on him and when he had the driver's [face] hands in his [hands]. He observed that the driver was wearing a white hoodie layered under a dark jacket[] and a flat brimmed baseball cap.

[Officer] Wealand returned to his vehicle and began pursuit of the subject vehicle. The officers broadcast a description of the driver and his clothing. In the areas of 5th Street and Seneca Street[], officers came upon the subject vehicle which had collided with an unoccupied parked vehicle. [Officer] Wealand remained at the subject vehicle. [Officer] Wealand observed a firearm and heroin

3

packets in plain view inside the vehicle. Officers Fustine and Ishman fanned out to search for the vehicle occupants.

Harrisburg Police Officer Corporal Robert Yost was working with the same Street Crimes Unit that night. Corporal Yost was driving a different city-owned vehicle, assisting a Dauphin County Adult Probation Officer. Corporal Yost heard over the radio that [Officer] Wealand had stopped a vehicle. Corporal Yost proceeded to that location. While *en route*, he heard over the police radio that the vehicle had crashed. As Corporal Yost drove south on 5th Street, he learned that the occupants had fled from the vehicle. As Corporal Yost reached the 2400 block of North 5th Street, directly south of where the vehicle crashed, he saw individuals jumping over fences. He observed the individuals within a minute of learning of the crash. When the individuals observed the police vehicle, they went south, fleeing through back yards. The probation officer accompanying Corporal Yost gave chase on Schuylkill Street; Corporal Yost was able to detain one of the individuals, Ishmail Haigh who was jumping over fences at 2459 North 5th Street. Corporal Yost detained Ishmail Haigh at a point approximately sixty yards from where the crash occurred.

As Corporal Yost detained Ishmail Haigh, he was aware that another individual was sought, described as wearing black with a white hat. Out of his peripheral vision, Corporal Yost observed an individual, accompanied by a female come out from between houses, two to three houses away. The male individual, later identified as [Appellant], was traveling west, the same direction in which Haigh had jumped over fences. Corporal Yost testified he suddenly encountered [Appellant] and the female as they emerged from between the houses. Corporal Yost testified, "[t]here was no time to run. It was like wow. We're all here at the same time, you know what I mean?" Corporal Yost observed that [Appellant] wore a black top with a white hood over his head. The white hood appeared to be worn under the black

4

jacket. Corporal Yost detained [Appellant] based upon the fact that [Appellant] matched the description of a person fleeing from officers, that he was within a couple houses of persons fleeing in the same direction, and that it would have been unusual for a person to be simply out taking a stroll on a cold January night. Corporal Yost placed Ishmail Haigh and [Appellant] in handcuffs.

As [Officer] Wealand arrived at that location, the detained individuals were sitting on the curb. [Officer] Wealand recognized Ishmail Haigh as a person with whom he had an encounter the previous evening. Haigh stated that he was "just trying to run away because Wealand broke out the window of the car." [Officer] Wealand recognized the other individual as the driver of the car on which he had been dragged, [Appellant]. [Officer] Wealand walked around [Appellant] to view him from the left, the same vantage point as he had during the stop. [Officer] Wealand re-enacted the encounter by placing his hands on [Appellant's] face as he had during the stop. [Officer] Wealand told [Corporal] Yost that he "had his face in his hands just like this[.]" [Officer] Wealand testified that the image of [Appellant's] face in his hands was the last "snapshot" he had of [Appellant]. [Appellant] then mumbled something to the effect of "[y]ou got me[.]" [Officer] Wealand observed a glittery substance on [Appellant's] jacket, made visible by the flashlights. [Appellant] was searched and transported for processing. [Officer] Wealand went to Harrisburg Hospital for evaluation.

Other officers responded to the scene. The headlights of the approaching vehicle made visible a glittery substance on [Appellant's] jacket. The glittery appearance immediately reminded Corporal Yost of glitter on the characters of a show "Twilight" which he had recently watched with his wife. He found the appearance of glitter "extraordinary[.]" Corporal Yost made the observation of the glitter before [Officer] Wealand had exited his vehicle. Corporal Yost testified that when

5

[Officer] Wealand arrived, he placed his hands on [Appellant's] face, looked directly at him, and said words to the effect of "that's the guy that was driving the car." Corporal Yost described the situation as fluid, that is, a foot pursuit in high drug/high crime area[], with officers arriving and maintaining an awareness of numerous potential threats.

[Officer] Wealand testified that he is absolutely sure that the person he saw in the vehicle was the individual [Corporal] Yost detained, [Appellant].

Officer Jon Fustine was the rear passenger in the police vehicle with [Officer] Wealand that night. Before the stop, as the subject vehicle turned onto 5th Street, from about [a] vehicle length away, Officer Fustine could see that the driver wore a white hat or hoodie. Officer Fustine did not see the driver during the stop, because he pursued the front seat passenger, a Tyshawn Black.

At the time of the stop, Officer Fustine observed [Officer] Wealand break the driver's window, the vehicle move in reverse, impact the police vehicle, and drive forward, dragging [Officer] Wealand. After [Officer] Wealand returned to the police vehicle, either Officer Fustine or Officer Ishman reported locations and descriptions over the radio. The description stated that the suspect was wearing a white hat or hood. Officer Fustine did not get a good look at the driver's face.

Officer Fustine conducted the investigation of the incident and filed charges against [Appellant] for aggravated assault, reckless endangering, carrying a firearm without a license, possession with intent to distribute heroin, possession of drug paraphernalia, escape, receiving stolen property, criminal mischief, and traffic offenses. Officer Fustine relied solely upon [Officer] Wealand's identification of [Appellant] as the driver of the vehicle as the basis for the arrest. A white skull cap was found at the scene, collected as evidence and

6

sent for testing. A sweatshirt was also collected. No glass was collected.

*See Gardner v. Carter* (C.P., No. 2014-CV-00737-CV, filed March 26, 2020) (March 2020 Opinion) at 2-7 (internal record citations, footnotes, and some brackets omitted).

This Court explained the procedural posture of this matter in its decision in a previous appeal involving this matter as follows:

> On January 28, 2012, police arrested Appellant and charged him with various crimes[FN2] related to an incident involving a motor vehicle traffic stop during which the vehicle's driver fled the scene and was pursued by police. The incident ultimately concluded with Appellant's apprehension and identification by the officers involved. On September 11, 2012, nine months after his arrest, Appellant was released from custody after DNA testing on items of clothing recovered from the scene of the incident did not match Appellant's DNA. The prosecution ultimately *nolle prossed* the charges against Appellant on February 25, 2013.
>
>> [FN2] Aggravated assault, reckless endangerment, carrying a firearm without a license, possession with intent to distribute heroin, possession of drug paraphernalia, escape, receiving stolen property, criminal mischief, and traffic offenses.
>
> Appellant filed the Complaint on October 3, 2014, and Appellees filed their "Answer of Defendants to Plaintiff's Complaint With New Matter Affirmative Defenses" on May 29, 2015. The parties conducted the depositions of Appellant and a defense witness on August 16, 2016, and January 19, 2017, respectively. Thereafter, on March 1, 2017, Appellees filed "Defendants' Motion for Summary Judgment" ([First] Summary Judgment Motion), arguing, *inter alia*, that Appellees were entitled to immunity

7

because they had probable cause to arrest and charge Appellant. Appellant filed his "Response to Defendants' [First] Motion for Summary Judgment" on April 14, 2017.

On June 4, 2019, the [T]rial [C]ourt granted the [First] Motion for Summary Judgment as it applied to the other defendants in this matter[FN3] but not as to Appellees. *See* Trial Court Memorandum Opinion and Order dated June 4, 2019 (Trial Court June 2019 Opinion) at 4-6. Instead, the [T]rial [C]ourt scheduled an evidentiary hearing to address the "remaining factual and legal issues" pertaining to Appellees. *See* Trial Court June 2019 Opinion at 6. The [T]rial [C]ourt explained this decision thusly:

> Whether or not evidence of willful misconduct exists to submit the matter to a jury is a matter for the court. At oral argument, counsel presented statements of fact regarding the observations of the officers and of Appellant, which facts did not appear in the record. The [T]rial [C]ourt therefore ordered that counsel file deposition transcripts. Counsel filed Appellant's transcript, but communicated to the [T]rial [C]ourt by letter that no depositions of officers have been taken. It is necessary for the [T]rial [C]ourt to take evidence on those matters in order to resolve the issues before us.

Trial Court June 2019 Opinion at 5.

> [FN3] The [T]rial [C]ourt granted summary judgment as to the other defendants named in the Complaint – Thomas Carter, Nicholas Ishman, Robert Yost, and the Harrisburg Police Bureau. *See* Trial Court [Trial Court June 2019 Opinion] at 6. Appellant does not appeal that grant of summary judgment as to those defendants in the instant matter.

8

The [T]rial [C]ourt conducted the hearing on October 9, 2019. Thereafter, based on the evidence adduced at the October 2019 hearing,[FN4] the [T]rial [C]ourt determined that Appellees were entitled to immunity because probable cause to arrest Appellant existed at the time of the incident. *See* [March 2020 Opinion] at 7-11. Therefore, on March 26, 2020, the [T]rial [C]ourt granted the [First] Summary Judgment Motion. *See* [] March 2020 Opinion at 11. Appellant timely appealed to this Court.

[FN4] *See* [March 2020 Opinion], at 2-7.

*Gardner v. Carter* (Pa. Cmwlth., No. 413 C.D. 2020, filed March 1, 2023) (*Gardner I*), slip op. at 2-4 (internal brackets omitted; certain footnotes omitted).

This Court vacated the Trial Court's March 26, 2020 Order on appeal, explaining that the Trial Court had improperly conducted a factual hearing prior to granting the First Summary Judgment Motion. *See Gardner I*, slip op. at 4-6 & Order. This Court explained that,

> [i]n so doing, the [T]rial [C]ourt created and considered evidence that did not exist and was not part of the record at the time the Appellees filed the Summary Judgment Motion. In effect, the [T]rial [C]ourt conducted a bifurcated bench trial on the issue of probable cause for the purpose of deciding the [First] Summary Judgment Motion in a matter where Appellant had requested a jury trial.

*Gardner I*, slip op. at 5. This Court concluded that this was error and noted that

> Pennsylvania's Rules of Civil Procedure do not allow for such proceedings at the summary judgment stage and instead expressly limit the record upon which a motion for summary judgment is to be decided to existing pleadings, depositions, answers to interrogatories, admissions and affidavits, and expert reports. *See* Pa.R.C[iv].P. []1035.1.

9

In this case, Appellees could have taken further depositions and submitted the transcripts thereof in anticipation of filing their [First] Summary Judgment Motion, but did not. As a result, the proper extent of the summary judgment record was the pleadings and discovery that existed at the time of the filing of the [First] Summary Judgment Motion, including the transcripts of the completed depositions of Appellant and Appellant's witness. Therefore, the [T]rial [C]ourt erred by conducting the October 9, 2019 hearing and then relying on the evidence adduced at that hearing, which should not have formed part of the summary judgment record, to decide the [First] Summary Judgment Motion as to Appellees.

*Gardner I*, slip op. at 5-6. Accordingly, the Court vacated the Trial Court's order granting the First Summary Judgment Motion and remanded the matter for further proceedings. *See Gardner I*, slip op. at 6 & Order.

On remand, Appellees conducted the depositions of Officer Fustine, Officer Wealand, and Corporal Yost. *See* Reproduced Record (R.R.) at 317-26. Each deposition consisted of a stipulation between the parties to adopt as evidence the transcript of the Trial Court's previous hearing conducted on October 9, 2019, and testimony from each witness that their answers to questions on the day of the deposition would be the same as the responses previously given at the October 9, 2019 hearing. *See id.* Thereafter, Appellees filed the Motion for Summary Judgment by Defendants Terry Wealand and Jon Fustine (Second Summary Judgment Motion) based, in part, on the previous October 9, 2019 testimony per the deposition stipulations. *See* Second Summary Judgment Motion, R.R. at 128-326. Appellant filed a brief in opposition to the Second Summary Judgment Motion and Appellees filed a response thereto. *See* Plaintiff's Brief In Opposition to Defendants' Motion for Summary Judgment, R.R. at 328-41; *see also* Defendants'

10

Reply to Plaintiff's Brief In Opposition to Defendants' Motion for Summary Judgment, R.R. at 343-58.  The Trial Court granted the Second Summary Judgment Motion via the Trial Court Order on July 1, 2024, and Appellant timely appealed to this Court.  *See* Trial Court Order, R.R. at 360; *see also* Notice of Appeal, R.R. at 362-70.

## II. Issues

On appeal,[2] Appellant claims that the Trial Court erred by granting summary judgment to Appellees because outstanding issues of fact exist as to whether Appellees had probable cause to arrest Appellant.  *See* Appellant's Br. at 6[3]

---

[2] Our standard of review of the grant of summary judgment is *de novo* and our scope of review is plenary.  *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011).  A motion for summary judgment is properly granted if "there is no genuine issue of any material fact as to a necessary element of the cause of action."  Pa.R.Civ.P. 1035.2(1).  "Summary judgment may be entered only when, after examining the record in the light most favorable to the non-moving party, and resolving of all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law."  *Pyeritz*, 32 A.3d at 692.

[3] Appellant stated his issues presented as follows:

> 1.  Whether the fact that [Appellant] and Ms. Ezell's deposition testimony that [Appellant] did not have glass on his clothing constituted a material fact?
>
> 2.  Whether the [H]onorable [T]rial [C]ourt erred in granting [s]ummary [j]udgment for the [f]alse [a]rrest and [f]alse [i]mprisonment [c]laims as to [Officer] Wealand and Officer Fustine because the undisputed material facts do not establish probable cause to arrest [Appellant]?
>
> 3. Whether the [H]onorable [T]rial [C]ourt erred in concluding that [Officer] Wealand was entitled to qualified immunity under federal law?  More specifically, whether the undisputed material facts in this case make it clear that his conduct was unlawful?

Appellant's Br. at 6.

& 17-22. Specifically, Appellant alleges that the question of whether there was glass on his sweatshirt at the time of his arrest remains outstanding and disputed and therefore precludes a grant of summary judgment in Appellees' favor. *See id.* at 6 & 16-17. Additionally, Appellant claims the Trial Court erred by granting summary judgment to Appellees based on immunity because Appellees acted unlawfully. *See id.* at 6 & 22-24.

## III. Discussion

## A. Probable Cause for Arrest

In his first and second issues, Appellant claims that the Trial Court erred by granting summary judgment because outstanding issues of fact exist in this matter precluding summary judgment. *See* Appellant's Br. at 16-22. First, Appellant claims broadly that the undisputed material facts of the underlying case did not establish probable cause for Appellees to arrest Appellant. *See id.* at 17-22. Second, Appellant argues that deposition testimony that Appellant did not have glass on his sweatshirt created an outstanding issue of fact that precluded summary judgment in favor of Appellees. *See id.* at 16-17. We do not agree.

In Pennsylvania, "[t]he elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010). Likewise, in the federal system,[4] "[t]o bring a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (internal quotation marks omitted). Where facts are

---

[4] We observe that Appellant pursued false arrest claims pursuant to 42 U.S.C. § 1983 and Pennsylvania common law. Thus, out of an abundance of caution, we include citations to both federal and Pennsylvania law in our discussion of probable cause for arrest.

undisputed, a determination regarding probable cause for an underlying arrest in a civil action is a question of law to be determined by the court. *See Simpson v. Montgomery Ward & Co.*, 46 A.2d 674, 676 (Pa. 1946) ("[T]he question of want of probable cause for [a] criminal prosecution which gave rise to [a] civil action, is a question not for the jury but for the court."). Where an arrest is based on probable cause, the underlying guilt or innocence of the arrested individual is immaterial to the lawfulness of the arrest. *See Manley*, 997 A.2d at 1241 ("An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not." (quoting *Renk v. City of Pittsburgh,* 641 A.2d 289, 293 (Pa. 1994)). Further,

> [p]robable cause is a much lower standard than proof beyond a reasonable doubt[.] Rather, probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged. Additionally, if probable cause is shown to exist, the arresting officer's motive, even if malicious, is immaterial. Likewise, an acquittal or other adjudication of innocence at a subsequent proceeding does not establish a lack of probable cause at the time of arrest.

*Id.* at 1239 (internal quotation marks and citations omitted); *see also Harvard*, 973 F.3d at 199-200 ("An officer has probable cause to arrest a person when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." (Internal quotation marks omitted)).

This Court has further explained that

> [p]robable cause does not exist where there is evidence of the unreliability of the witness whose statement is relied

upon, where exculpatory evidence is disregarded, and where material facts are withheld or misrepresented; however, a police officer has no duty to investigate exculpatory evidence that is not readily available, speculative information provided by the accused, and the statements of a single credible witness may serve as sufficient evidence of probable cause.

*Combs v. Blowes* (Pa. Cmwlth., No. 1561 C.D. 2013, filed Feb. 17, 2015),[5] slip op. at 10-11; *see also Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000) ("a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause"). As the Superior Court of Pennsylvania has noted[6] regarding the requirements of an identification to sustain probable cause for arrest: "it is established in this Commonwealth that tentative identifications are sufficient even to sustain a conviction. Certainly, no more is required for an arrest." *Commonwealth v. Miller*, 438 A.2d 995, 999 (Pa. Super. 1981).

In determining that probable cause to arrest Appellant existed in this case, the Trial Court noted that

[Officer] Wealand was the victim of aggravated assault and reckless endangering, having been dragged by the eluding vehicle. [Officer] Wealand observed [Appellant] two times during the traffic stop. He then unequivocally identified [Appellant] as the driver at the time of [Appellant's] detention by [Corporal] Yost. There existed no exculpatory evidence or substantial evidence of any unreliability of [Officer] Wealand's identification.

---

[5] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

[6] Although not binding, Superior Court decisions are persuasive authority in this Court. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

March 2020 Opinion at 9.

We agree with the Trial Court that probable cause to arrest Appellant existed under the circumstances of this case. In arresting Appellant, Corporal Yost relied upon the identification provided by Officer Wealand. Officer Wealand, who was both a responding police officer and the victim of the crimes for which Appellant was arrested, arrived at the scene where Appellant was detained, looked directly at Appellant, examined Appellant by placing his hands on Appellant's face, and then unequivocally identified Appellant to Corporal Yost. Regardless of the accuracy of this identification, there exists no question that this was the information known to Corporal Yost when he arrested Appellant.[7] Officer Wealand's positive identification warranted Corporal Yost's belief that the offenses described by Officer Wealand had been committed and that Appellant had committed those offenses. In other words, regardless of its accuracy, Officer Wealand's positive identification provided Corporal Yost with probable cause to arrest Appellant. *See Manley*; *Renk*; *Harvard*.

Additionally, despite Appellant's suggestions, we have found no evidence in the record indicating that Officer Wealand's identification was

---

[7] We appreciate that, while the court determines the existence of probable cause based on undisputed facts, as discussed *supra*, when the facts underlying probable cause are disputed, a jury may be required to play a role in determining underlying facts. *See Simpson v. Montgomery Ward & Co.*, 46 A.2d 674 (Pa. 1946). We observe that the instant matter, however, is not such a case where the operative fact required for the probable cause determination – that Corporal Yost was operating on Officer Wealand's positive identification – is independent of the accuracy of Officer Wealand's identification.

15

unreliable.[8]  To the extent that Appellant suggests that the police officers were obligated to test Appellant's sweatshirt or to obtain DNA test results before arresting him, we disagree.  *See* Appellant's Br. at 22.  As discussed *supra*, in determining whether probable cause exists to arrest an individual suspected of committing crimes, "a police officer has no duty to investigate exculpatory evidence that is not readily available[.]"  *Combs*, slip op. at 10-11.  Accordingly, the Trial Court did not err in determining that Corporal Yost had probable cause to arrest Appellant based on Officer Wealand's identification.[9]  Because Corporal Yost had probable cause to arrest, the Trial Court properly granted summary judgment on Appellant's false imprisonment claim.

Appellant's suggestion that conflicting testimony obtained at a later time regarding whether glass was present on his sweatshirt at the time of his arrest somehow created an issue of material fact as to whether police had probable cause to arrest him is likewise incorrect.  *See* Appellant's Brief at 16-17.  To defeat summary judgment, a disputed fact must be material to – *i.e.*, have the ability to directly affect – the outcome of a case.  *See Logans' Rsrv. Homeowners' Ass'n v. McCabe*, 152 A.3d 1094, 1099 n.8 (Pa. Cmwlth. 2017) ("A material fact is one that directly affects the outcome of the case.") (quoting *Kenney v. Jeanes Hosp.*, 769 A.2d 492, 495 (Pa. Super. 2001)).  Whether glass was present on Appellant's

---

[8] We find Appellant's suggestion that Officer Wealand somehow attempted to identify Appellant by touch, *see* Appellant's Brief at 19-20, to be completely unsupported by, and in fact expressly disproven by, the record.  *See* R.R. at 260-62.

[9] Officer Fustine also relied on Officer Wealand's identification in conducting the investigation into the charges and as the basis for Appellant's arrest.  *See* March 2020 Opinion at 7.  To the extent Officer Fustine's justification for lodging the subsequent charges would need to be considered in this matter, we observe that, as with Corporal Yost's arrest of Appellant discussed *supra*, Officer Wealand's identification provides such justification as well.

clothing is not material to the determination of whether the police had probable cause to arrest Appellant in this matter. Officer Wealand's identification that provided the probable cause for Appellant's arrest was based on Officer Wealand's multiple observations of Appellant's face and was independent of any evidence of glass on Appellant's sweatshirt.[10] Accordingly, as the Trial Court noted, "[Appellant's] claims that he did not have glass on his clothing . . . raise no issue[] of material fact to as to the existence of probable cause [to arrest]." March 2020 Opinion at 9. Thus, Appellant's claim that this alleged discrepancy in the testimony created a dispute regarding a material fact that precluded summary judgment fails.

## B. Immunity Claim

In his final argument, Appellant alleges that the Trial Court erred by determining that Appellees were entitled to immunity[11] under the facts of this case. *See* Appellant's Br. at 22-24. We discern no error.

Federal qualified immunity shields government officials performing discretionary functions from liability for civil damages provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Further,

---

[10] In fact, Officer Wealand testified explicitly that he would have been able to positively identify Appellant in the absence of glass on Appellant's clothing. *See* R.R. at 284.

[11] While he mentions "qualified immunity under federal law" in the heading of the immunity argument section of his brief, *see* Appellant's Brief at 22, we note that Appellant bases his immunity argument solely on state immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541-8542. *See* Appellant's Br. at 22-24. We discuss federal qualified immunity herein nonetheless, as did the Trial Court.

> [q]ualified immunity encompasses mistaken judgments that are not plainly incompetent. Under qualified immunity, police officers are entitled to a certain amount of deference for decisions they make in the field. They must make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving. The reasonableness of the officer's belief should be judged from that on-scene perspective, not with the perfect vision of hindsight.

*Gilles*, 427 F.3d at 207 (internal quotation marks and citations omitted). Additionally, in Pennsylvania, the Political Subdivision Tort Claims Act[12] ("Tort Claims Act") provides immunity for employees of local agencies unless the employee's actions constituted a crime, actual fraud, actual malice, or willful conduct. *See* 42 Pa.C.S. § 8550.[13]

Appellant suggests that the deposition testimony claiming that no glass was present on Appellant's clothing at the time of his arrest evidences actions by Officer Wealand and Officer Fustine that constitute crimes, actual fraud, actual malice, or willful conduct. *See* Appellant's Br. at 23. Appellant argues that, if believed, "the inescapable conclusion" from such testimony would necessarily be

---

[12] 42 Pa.C.S. §§ 8541-8542.

[13] Section 8550 of the Tort Claims Act provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550.

18

that Officer Wealand and Officer Fustine lied about facts leading to Appellant's arrest and then created false police reports regarding the same, thus evidencing fraud, malice, and willful misconduct. *Id.* Appellant then sweepingly concludes that "[o]ne can hardly imagine an act that would be more indicative of fraud, malice, and willful misconduct." *Id.* We do not agree. Even if true, a lack of glass on Appellant's clothing does not mandate a determination that Officers Wealand and Fustine were lying as opposed to simply mistaken in consideration of their on-scene perspective at the time of Appellant's arrest. Appellant's binary suggestion that a conflict in testimony necessarily illustrates a situation where an individual is either (1) correct, or (2) lying, is incongruent with basic human experience and is not supported by law. We further note that Appellant cites no legal support regarding his hyperbolic suggestion that a dispute in the testimony would create an "inescapable conclusion" that Officers Wealand and Fustine were lying, thus evidencing fraud, malice, or willful misconduct. *See id.*

Based on the facts described *supra*, the Trial Court determined that Officers Wealand and Fustine were immune from Appellant's claim of false arrest under federal law in this matter because their "identification and arrest of [Appellant] were reasonable judgments under the circumstances." March 2020 Opinion at 10. Likewise, the Trial Court determined that state law immunity also applied to the instant case because "the record is devoid of evidence of malice, willful misconduct, or intentional wrongdoing related to the identification and arrest of [Appellant]." *Id.* at 11. Despite Appellant's unsupported suggestions to the contrary, we agree with the Trial Court's determination on this issue. As such, Appellant's claim that Appellees were not entitled to immunity fails.

## IV. Conclusion

For these reasons, we affirm the Trial Court Order.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tahir Gardner,                          :
                    Appellant          :
                                       :
        v.                             :
                                       :
Terry Wealand and                      :    No. 978 C.D. 2024
Jon Fustine                            :

## **O R D E R**

AND NOW, this 7th day of May, 2026, the July 1, 2024 order of the Court of Common Pleas of Dauphin County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge